**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD GEBHARDT,
*Plaintiff-Appellant*,

v.

KIRSTJEN NIELSEN, Secretary,
Department of Homeland Security;
L. FRANCIS CISSNA, Director, U.S.
Citizenship and Immigration
Services ("USCIS"); IRENE MARTIN,
Field Office Director, San
Bernardino Field Office, USCIS;
JEAN THARPE, Field Office Director,
Vermont Field Office, USCIS;
JEFFERSON B. SESSIONS III, Attorney
General, U.S. Department of Justice,
*Defendants-Appellees.*

No. 15-56072

D.C. No.
5:14-cv-02277-
VAP-DTB

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief Judge, Presiding

Argued and Submitted December 5, 2017
San Francisco, California

Filed January 9, 2018

Before:  Susan P. Graber and N. Randy Smith, Circuit Judges, and Lee H. Rosenthal,[*] Chief District Judge.

Opinion by Judge Graber

---

## SUMMARY[**]

---

### Immigration

The panel affirmed the district court's dismissal for lack of jurisdiction of Richard Gebhardt's action challenging the Department of Homeland Security's denial of the I-130 visa petitions he filed on behalf of his wife and her children.

The panel noted that Gebhardt's I-130 petitions would have been otherwise granted, but the DHS denied the petitions under the Adam Walsh Child Protection and Safety Act of 2006, which creates an exception for visa petitioners who have been convicted of certain sex offenses against a child. Gebhardt had been convicted of a covered offense, and the DHS found that he failed to show that, despite the conviction, he posed "no risk" to the beneficiaries of the petitions.

The panel held that a pair of jurisdictional provisions insulated the "no risk" determination from review. First, the

---

[*] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Immigration and Nationality Act bars review of any decision the authority for which is specified as falling under the discretion of the Secretary of the DHS. Second, the Adam Walsh Act grants the Secretary "sole and unreviewable discretion" in making "no risk" determinations. Thus, the panel concluded that it could review Gebhardt's claims only insofar as they challenged actions beyond the scope of the Secretary's sole and unreviewable discretion.

The panel concluded it had jurisdiction to consider the predicate legal issue of whether the Adam Walsh Act applied to Gebhardt's case even though he filed his petitions before the statute took effect. The panel held that the Adam Walsh Act applies to petitions, like those of Gebhardt, that were filed, but not yet adjudicated, before the statute's effective date. The panel also concluded that it had jurisdiction to consider Gebhardt's argument that, because the Adam Walsh Act took effect after he committed the crime resulting in the denial of his petitions, the application of the statute to him violated the Ex Post Facto Clause. The panel rejected this contention, concluding that Congress intended to create a civil, non-punitive scheme, and that the Adam Walsh Act is not so punitive that it negates Congress' intent to create a civil regime.

The panel further determined that it lacked jurisdiction to review Gebhardt's remaining statutory claims because each one challenged how the Secretary exercises – or has exercised – his or her sole and unreviewable discretion. Finally, the panel assumed, without deciding, that the Adam Walsh Act permits the court to review colorable constitutional claims concerning "no risk" determinations, but the panel concluded that it lacked jurisdiction to consider his substantive and

procedural due process claims because they were not colorable.

## COUNSEL

Vishwanath Kootala Mohan (argued) and Peter Afrasiabi, One LLP, Newport Beach, California, for Plaintiff-Appellant.

Joshua S. Press (argued), Trial Attorney; Hans H. Chen, Senior Litigation Counsel; William C. Peachey, Director; Chad A. Readler, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

GRABER, Circuit Judge:

Plaintiff Richard Gebhardt, a United States citizen, filed I-130 petitions with the United States Citizenship and Immigration Services ("USCIS"), seeking Legal Permanent Residence ("LPR") status for his non-citizen wife and her three non-citizen children. The Secretary of Homeland Security rejected those petitions pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). Although the I-130 petitions would have been granted otherwise, the Adam Walsh Act amended the statute by creating an exception for petitioners who have been convicted of certain sex offenses against a child, and Plaintiff has been

convicted of a covered offense.[1] The Secretary determined that Plaintiff had failed to show that, despite his conviction, he posed "no risk" to the beneficiaries of the petition. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Plaintiff then brought this action, alleging various statutory and constitutional violations. The district court dismissed the action for lack of subject matter jurisdiction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2000, a jury convicted Plaintiff of committing a "lewd and lascivious act with a child under the age of fourteen," in violation of California Penal Code § 288(A).[2] After serving a three-year sentence, Plaintiff married a non-citizen, who has three non-citizen children. Shortly thereafter, in 2005, Plaintiff filed I-130 petitions on behalf of his wife and her children.

On July 28, 2006, one day after the Adam Walsh Act took effect, USCIS approved the petitions. But in 2009, USCIS ran an additional background check. Upon discovering Plaintiff's record of conviction, USCIS issued a notice of intent to revoke the approval of the petitions. The notice invited Plaintiff to submit evidence that he posed "no risk" to the beneficiaries of his petitions. He responded with extensive evidence, including notarized affidavits from

---

[1] For the purpose of this appeal, Plaintiff does not dispute that his crime of conviction fits the criteria of the Adam Walsh Act.

[2] Because we are reviewing the dismissal of a complaint for lack of jurisdiction, we take all plausible allegations in the complaint as true. *Armstrong v. Northern Mariana Islands*, 576 F.3d 950, 953 n.3 (9th Cir. 2009).

family members, friends, and co-workers and a psychosexual evaluation. Nevertheless, USCIS revoked its earlier approval of the petitions. Plaintiff appealed to the Board of Immigration Appeals, which dismissed the appeal for lack of jurisdiction.

In 2010, Plaintiff filed a new set of I-130 petitions and submitted additional evidence to support his contention that he posed "no risk" to the beneficiaries of the petitions. USCIS denied those petitions.

Thereafter, Plaintiff filed the present action. On the government's motion, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1). Plaintiff timely appeals.

## DISCUSSION

The Immigration and Nationality Act ("INA") provides generally that, except in circumstances not present here,

> any citizen of the United States claiming that an alien is entitled to classification [as] . . . an immediate relative . . . may file [an I-130] petition.

8 U.S.C. § 1154(a)(1)(A)(i) ("Clause (i)"). But the Adam Walsh Act created an exception to that regime:

> Clause (i) shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion,

determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

*Id.* § 1154(a)(1)(A)(viii)(I) ("Clause (viii)(I)").

USCIS has determined that, "given the nature and severity of many of the underlying offenses and the intent of the [Adam Walsh Act]," determinations that a citizen poses no risk should be "rare." U.S. Citizenship and Immigration Servs., U.S. Dep't of Homeland Security, Interoffice Memorandum, Transmittal of SOP for Adjudication of Family-Based Petitions Under the Adam Walsh Child Protection and Safety Act of 2006 (Sept. 24, 2008). A pair of jurisdictional provisions insulate those determinations from review. First, the INA bars us from reviewing any "decision or action . . . the authority for which is specified [as falling under] the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Second, Clause (viii)(I) grants the Secretary "sole and unreviewable discretion" in making "no risk" determinations.

Those provisions clearly demonstrate Congress' intent to prevent us from reviewing how the Secretary exercises his or her "sole and unreviewable discretion" to make "no risk" determinations. *See Roland v. USCIS*, 850 F.3d 625, 629 (4th Cir. 2017) ("It is clear that the USCIS has 'sole and unreviewable discretion' to determine whether a petitioner poses no risk."); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 381 (6th Cir. 2017) (same); *Bremer v. Johnson*, 834 F.3d 925, 929 (8th Cir. 2016) (same).[3] Thus, we may

---

[3] We therefore cannot and do not consider Plaintiff's arguments that the Secretary got his case wrong on the facts.

review Plaintiff's claims only insofar as they challenge action beyond the scope of the Secretary's "sole and unreviewable discretion."

A. *Application of the Adam Walsh Act to Already-Filed Petitions*

Plaintiff first claims that the Adam Walsh Act does not apply to his case because he filed his petitions before that statute took effect. We have jurisdiction to consider that issue. *See Bremer*, 834 F.3d at 929 (holding the same). Although the INA precludes "direct review of . . . discretionary decisions," it does not bar us from reviewing "predicate legal question[s]." *Tapia v. Gonzales*, 430 F.3d 997, 999 (9th Cir. 2005). In *Tapia*, for example, we considered a predicate legal question regarding a non-citizen's eligibility to be considered for relief. *Id.* And the Sixth Circuit, in a case much like the one before us, held that it retained jurisdiction to consider the "predicate legal issue" of whether a particular conviction qualifies as a "specified offense against a minor" under the Adam Walsh Act. *Privett*, 865 F.3d at 380.

Whether the Adam Walsh Act applies to already-filed petitions is a similar predicate legal question. Its answer turns entirely on Congress' intent, and the question in no way concerns *how* the Secretary chooses to exercise discretion. Rather, the issue is whether Plaintiff's case falls within that discretion *at all*. *See id.* (considering whether the Adam Walsh Act applied to a particular individual in the first place). We therefore retain jurisdiction over the issue.

Turning to Plaintiff's argument, then, we hold that the Adam Walsh Act applies to petitions that were filed, but not

yet adjudicated, before its effective date. Because Plaintiff's petitions fall within that category, the Act governs his case.

Clause (i) specifies who "may file" a petition for a family-based visa. As noted, the Adam Walsh Act limited that clause: "Clause (i) shall not apply to a citizen . . . who has been convicted of a specified offense against a minor," unless the Secretary determines that the petitioner poses "no risk" to the beneficiary of the petition. Clause (viii)(I). Plaintiff would have us read those provisions literally. In his view, the amendment limits who "may," in the ministerial sense, "file" a petition—not which petitions the Secretary may, as a substantive matter, grant.

Despite its awkward wording, the amendment does not literally limit who "may file" a petition. We think it clear that Congress did not enact the statute to bar certain citizens from placing pieces of paper in front of an agency for processing. Rather, when Congress declared that "Clause (i) shall not apply," Congress was expressing its judgment that citizens convicted of certain offenses may not, unless stringent conditions are met, benefit from the petitioning framework described in Clause (i). In keeping with that goal, the Adam Walsh Act provision amending the INA is described as "barring convicted sex offenders" not from *filing* petitions, but "*from having family-based petitions approved*." Pub. L. No. 109-248, § 402, 120 Stat. 587, 622 (2006) (emphasis added) (capitalization removed).

We recognize that the phrase "may file," if read literally, suggests the opposite conclusion. But we should avoid an interpretation that renders part of a statute unnecessary, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013), as Plaintiff's proposed interpretation does. Clause (viii)(I)

directs the Secretary to determine *whether* a petitioner poses "no risk" to the alien *with respect to whom a petition was filed*. But if Clause (viii)(I) barred citizens convicted of a specified offense against a minor from filing a petition *at all*, the Secretary could never make the kind of risk determination that the Adam Walsh Act requires. Because that interpretation would nullify the Secretary's decision-making authority, we decline to read "may file" as Plaintiff proposes we do.

In sum, because the Adam Walsh Act clearly delineates who may have a petition granted—rather than who may literally file a petition—we hold that the amended statute applies to petitions that were filed before, but were still pending on, its effective date. USCIS thus correctly applied the Adam Walsh Act in Plaintiff's case.

## B. *Retroactivity*

Plaintiff next argues that, because the Adam Walsh Act took effect after he committed the crime resulting in the denial of his petitions, the government violated the Ex Post Facto Clause by applying the amendment in his case. Like the previous question, this issue concerns Congress' intent and not the Secretary's discretion. As a result, we have jurisdiction to consider this question, too.

To determine whether the application of a law violates the Ex Post Facto Clause, we employ a two-step inquiry. *Smith v. Doe*, 538 U.S. 84, 92 (2003). We ask first whether Congress meant to establish a civil scheme—rather than a punitive one—when it enacted the law. *Id.* If so, we then consider whether the statutory scheme is "so punitive either

in purpose or effect as to negate [Congress'] intention to deem it civil." *Id.* (internal quotation marks omitted).

Congress clearly meant to create a civil, non-punitive scheme here. It enacted the amendments "[t]o *protect* children from sexual exploitation and violent crime, to *prevent* child abuse and child pornography, to *promote* Internet safety, and to honor the memory of . . . child crime victims." Pub. L. No. 109-248, 120 Stat. 587, 587 (2006) (emphases added). To that end, the entire scheme focuses on prevention—not punishment. *See id.* at 622 (describing "Immigration Law Reforms *to Prevent* Sex Offenders from Abusing Children" (emphasis added)).

At the second step, we conclude that the Adam Walsh Act is not so punitive that it negates Congress' intent to create a civil regime. In determining whether a law's punitive effects outweigh its regulatory purposes, we consider a number of factors, including whether the regulatory scheme: "(1) has been regarded in our history and traditions as a punishment; (2) imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) has a rational connection to a nonpunitive purpose; or (5) is excessive with respect to that purpose." *Clark v. Ryan*, 836 F.3d 1013, 1017 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 1350 (2017).

The Adam Walsh Act undoubtedly makes it more difficult for a citizen convicted of a specified offense to obtain LPR status for his or her non-citizen relatives. And, in that sense, the statute imposes an affirmative restraint on those citizens. As a result, the statute might have some deterrent effect on those considering committing one of its specified offenses.

But the Adam Walsh Act has a clear non-punitive purpose: preventing those convicted of specified offenses from having access to the persons that they are most likely to harm. And the statute, by limiting access to the granting of LPR status for relatives, does not impose a restraint commonly thought of as a punishment. Moreover—and perhaps most importantly—the statutory regime is not unduly excessive with respect to its purpose. Although the Adam Walsh Act generally prohibits those convicted of specified offenses from having their I-130 petitions granted, it expressly provides an exception for those petitioners who pose "no risk"—i.e., those who do not threaten the civic interests that Congress was trying to protect.

Viewed together, the *Clark* factors lead us to conclude that the punitive aspects of the Adam Walsh Act do not outweigh its non-punitive purposes. Applying the statute to pending petitions thus does not violate the Ex Post Facto Clause.

## C.  *Plaintiff's Statutory Claims*

Plaintiff challenges several of USCIS's standards for adjudicating petitions that trigger the Adam Walsh Act. First, Plaintiff argues that USCIS wrongly employs a "beyond any reasonable doubt" standard. Second, Plaintiff contends that USCIS effectively employs an impermissible "presumption of denial." Third, Plaintiff asserts that USCIS was required to go through the notice-and-comment process before implementing those standards. And fourth, Plaintiff claims that USCIS acted ultra vires in adopting those standards.

We lack jurisdiction to review any of those claims because each one challenges *how* the Secretary exercises—or

has exercised—his or her "sole and unreviewable discretion" to adjudicate I-130 petitions. True, we retain jurisdiction over challenges to an agency's "pattern and practice." *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 872–73 (9th Cir. 2009). But, as we have explained before, "the phrase 'pattern and practice' is not an automatic shortcut to federal court jurisdiction." *Id.* at 872. No matter how a plaintiff characterizes an argument, we can review a claim in this context only if it challenges a genuinely *collateral* action. In *Proyecto San Pablo v. INS*, 189 F.3d 1130 (9th Cir. 1999), for example, we considered the collateral question of whether USCIS had denied the plaintiffs due process by not permitting them access to certain records before their applications were adjudicated.

Here, though, Plaintiff's statutory claims are not collateral challenges at all. Rather, each claim directly disputes acts taken within the Secretary's "sole and unreviewable discretion." It does not matter that Plaintiff characterizes his claims as challenges to the substantive standards that the Secretary uses. The standards by which the Secretary reaches a decision within his or her "sole and unreviewable discretion"—and the methods by which the Secretary adopts those standards—are just as unreviewable as the Secretary's ultimate decisions themselves. *See Ortiz v. Meissner*, 179 F.3d 718, 722 (9th Cir. 1999) (holding that we lacked jurisdiction to consider INS's "interpretation or application of . . . substantive eligibility criteria").

Plaintiff claims, at bottom, that the Secretary has set the bar too high. But the bar is the Secretary's to set, and the Secretary enjoys "sole and unreviewable discretion" in doing so. We thus lack jurisdiction to review Plaintiff's statutory claims concerning the "no risk" determination.

D.  *Plaintiff's Constitutional Claims*

Finally, Plaintiff makes two constitutional claims relating to the "no risk" determination.  First, Plaintiff claims that the Adam Walsh Act—either on its face or as applied to his individual case—infringes his substantive due process rights.  Second, Plaintiff argues that USCIS's procedures for adjudicating I-130 petitions infringed his procedural due process rights.

Again, we must begin by considering our jurisdiction.  The phrase "sole and unreviewable discretion" at least suggests that Congress meant to prohibit us from reviewing even constitutional claims concerning "no risk" determinations.  *See Bremer*, 834 F.3d at 931 (noting that a grant of "sole and unreviewable discretion" is "among the strongest known to the law").  But the Supreme Court has cautioned us to hesitate before interpreting a statutory scheme as taking the "extraordinary step" of barring review of constitutional claims.  *Califano v. Sanders*, 430 U.S. 99, 109 (1977) (internal quotation marks omitted).  We thus assume, without deciding, that the Adam Walsh Act permits us to review colorable constitutional claims.  *See Bremer*, 834 F.3d at 932 (taking the same approach).  Because neither of Plaintiff's constitutional claims is colorable, we lack jurisdiction to review either one.  *See Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) (explaining that, to invoke our jurisdiction, a petitioner must allege a constitutional violation that is at least colorable).

Plaintiff argues that USCIS, by denying his petitions, denied him the fundamental right to preserve the integrity of his family.  We see Plaintiff's claim somewhat differently.  Boiled down, Plaintiff's theory is that he has a fundamental

right to reside in the United States with his non-citizen relatives. But that theory runs headlong into Congress' plenary power over immigration. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). We acknowledge, of course, that individuals have a strong interest in living with their family members. But that interest cannot be so fundamental that it overrides Congress' plenary power in this domain. As we have said before, the generic right to live with family is "far removed" from the specific right to reside in the United States with non-citizen family members. *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010) *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). That is why, in *Morales*, we held that a non-citizen's deportation did not violate his family's substantive due process rights. *Id.* We therefore conclude that Plaintiff's substantive due process claim is not colorable, and we decline to consider it further.

Plaintiff also asserts a procedural due process violation. To bring a successful procedural due process claim, a plaintiff must point to (1) the deprivation of a constitutionally protected liberty or property interest, and (2) the "denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Plaintiff's claim fails on the second point. Even assuming that Plaintiff has a protected liberty interest, he received all process due to him.

Due process requires only "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Here, USCIS afforded Plaintiff such an opportunity. USCIS gave Plaintiff notice of its intent to

revoke his petitions and invited him to submit evidence showing that he posed "no risk." Indeed, USCIS reviewed the 33 documents that Plaintiff submitted for review. Then, when USCIS revoked its earlier approval of Plaintiff's I-130 petitions, it did so in a well-reasoned, five-page decision. On those facts, we have little trouble concluding that Plaintiff failed to bring a colorable claim—especially because, as we understand the complaint, Plaintiff has not pointed to a deficiency in USCIS's *process* at all. Rather, Plaintiff's "due process claim" essentially rehashes the arguments against the substantive standards that the Secretary employs.

Plaintiff's requested relief confirms that deficiency. Plaintiff does not ask that we instruct USCIS to use some additional procedure in re-examining his petitions. What Plaintiff wants is for USCIS to lower its "no risk" standard of review. But that request has nothing to do with *process* at all. We therefore conclude that Plaintiff has not alleged a colorable due process claim.

## CONCLUSION

The Adam Walsh Act applies to Plaintiff's I-130 petitions even though he filed them before it took effect. Applying that Act to pending petitions does not violate the Ex Post Facto Clause. Plaintiff's remaining claims are unreviewable. Plaintiff's statutory claims, although he characterizes them as collateral challenges, are actually challenges to action within the Secretary's "sole and unreviewable discretion," and neither of Plaintiff's constitutional claims is colorable.

**AFFIRMED.**