**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3440

_____

AHMED BAKRAN,

Appellant

v.

SECRETARY, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
DIRECTOR, UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES;
ROBERT COWAN, Field Office Director, Lee's Summit,
MO Field Office,
United States Citizenship and Immigration Services;
ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:15-cv-00127)
District Judge: Hon. John R. Padova

_____

Argued: March 16, 2017

_____

Before: GREENAWAY, JR., SHWARTZ, <u>Circuit Judges</u>,
and SIMANDLE, <u>Senior District Judge</u>[*]

(Opinion Filed:  July 5, 2018)

Nicklaus J. Misiti          [ARGUED]
Law Offices of Nicklaus Misiti, PLLC
40 Wall Street, 28th Floor
New York, NY 10005

   *Counsel for Appellant*

Sophie Kaiser
Benjamin C. Mizer
William C. Peachey
Sarah S. Wilson          [ARGUED]
United States Department of Justice
Office of Immigration Litigation
Room 6223
450 5th Street, N.W.
Washington, D.C. 20530

   *Counsel for Appellees*

_____

   [*] Honorable Jerome B. Simandle, United States District Judge of the United States District Court for the District of New Jersey, sitting by designation.  Judge Simandle assumed senior status after the case was argued before the panel.

---

OPINION OF THE COURT

---

SHWARTZ, Circuit Judge.

Ahmed Bakran appeals from the District Court's order granting summary judgment in favor of the Secretary of the United States Department of Homeland Security, the Director of the United States Citizenship and Immigration Services (the "USCIS"), and the Attorney General ("Defendants") on Bakran's statutory and constitutional challenges to the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 402(a), 120 Stat. 587, 622-23 (2006) (the "AWA"), and related agency memoranda.

The AWA restricts the ability of a United States citizen convicted of a sex offense to sponsor an immediate relative's immigration application. Bakran claims that certain protocols used to enforce the AWA violate the Administrative Procedures Act, 5 U.S.C. § 701 et seq. (the "APA"). The protocols he challenges, however, simply guide the Secretary's determination, and as we explain herein, we lack jurisdiction to review them.

Bakran also asserts that the AWA violates his right to marriage and is impermissibly retroactive. The AWA does not infringe his marriage right but rather deprives him of an immigration benefit to which he has no constitutional right. Moreover, because the Act is aimed at providing prospective

3

protection, it is not impermissibly retroactive. Therefore, we will vacate the District Court's order granting summary judgment to Defendants on Bakran's APA claims, and remand with directions to dismiss the APA claims for lack of jurisdiction, and affirm the District Court's order denying relief on his constitutional and retroactivity challenges to the AWA.

I

A

Before 2006, the Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq. (the "INA"), provided that "[a]ny citizen of the United States claiming that an alien is entitled to . . . immediate relative status . . . may file a petition with the Attorney General for such classification." Id. § 1154(a)(1)(A)(i). "Immediate relatives" generally include the spouses, children, and parents of a United States citizen. Id. § 1151(b)(2)(A)(i). Such relatives may enter the United States without regard to numerical limitations on immigration to the United States. Id. § 1151(b). In 2006, the AWA amended the INA so that a citizen "who has been convicted of a specified offense against a minor"[1] may not file any petition on behalf of such relatives "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with

---

[1] The AWA relies on 42 U.S.C. § 16911(7)(H)'s definition of a "specified offense against a minor," 8 U.S.C. § 1154(a)(1)(A)(viii)(II), and 42 U.S.C. § 16911(7)(H) defines "a specified offense against a minor" to include "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct," id.

4

respect to whom a petition . . . is filed." Id. § 1154(a)(1)(A)(viii)(I). This provision is intended to effectuate the AWA's stated purposes: "[t]o protect children from sexual exploitation and violent crime, [and] to prevent child abuse and child pornography." AWA, 120 Stat. at 587.

The USCIS issued two memoranda relevant to our consideration of the AWA. The first, written by Michael Aytes, Associate Director of Domestic Operations of the USCIS (the "Aytes Memo"), sets forth the burden of proof a petitioner must meet to show that he or she poses no risk to his or her alien relative. Specifically, the memo interpreted the "no risk" requirement to mean that to avoid denial of a petition, "a petitioner who has been convicted of a specified offense against a minor must submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiar[ies]." U.S. Citizenship and Immigration Services, Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006 (Feb. 8, 2007), available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/adamwalshact020807.pdf. The second, written by Donald Neufeld, Acting Associate Director of Domestic Operations of the USCIS (the "Neufeld Memo"), states that "given the nature and severity of many of the underlying offenses and the intent of the [AWA], approval recommendations should be rare." U.S. Citizenship and Immigration Services, Transmittal of SOP for Adjudication of Family-Based Petitions Under the Adam Walsh Child Protection and Safety Act of 2006 (Sept. 24, 2008) (emphasis omitted).

B

Bakran is a United States citizen. In 2004, he was convicted of aggravated indecent assault and unlawful contact with a minor. He was sentenced to 11.5 to 23 months' imprisonment, 10 years of probation, and lifetime sexual offender registration. He was required to undergo a psychosexual evaluation and prohibited from any unsupervised contact with minors.

In 2012, Bakran married Zara Qazi, an adult Indian national. He then sought lawful permanent resident status for her by filing a Form I-130, Petition for Alien Relative, 8 C.F.R. § 204.1(a)(1), and a Form I-485, Application for Permanent Residence, 8 C.F.R. 245.2(a)(3)(iii), with the USCIS. In January 2014, he received a Request for Evidence/Notice of Intent to Deny his petition (the "Notice"), which noted that his 2004 conviction prevented him from designating his wife as his immediate relative for the purposes of exempting her Application for Permanent Residence from the worldwide levels of numerical limitations pursuant to 8 U.S.C. § 1151(b)(2)(A)(i) unless he could show he posed no risk to her. Bakran had already submitted materials regarding his conviction with his initial application, and he filed additional documents in response to the Notice. The USCIS determined that Bakran had committed a "specified offense against a minor" under the AWA, and denied his application.

Bakran filed suit in the United States District Court for the Eastern District of Pennsylvania against Defendants based

6

on the denial of his petition. He alleged the denial violated the Constitution and APA. Defendants moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the District Court lacked jurisdiction to review the Secretary's determination of Bakran's petition. The District Court denied the motion, reasoning that Bakran "does not question the Secretary's . . . 'unreviewable discretion'" concerning the decision about him. Bakran v. Johnson, CIV. A. No. 15-127, 2015 WL 3631746, at *4 (E.D. Pa. June 11, 2015). Instead, according to the District Court, Bakran challenges the Secretary's "non-discretionary threshold determination" and argues that his inability to "file an I-130 petition on his wife's behalf . . . violates his constitutional rights." Id. The District Court held that Bakran's APA challenge did not seek review "of the discretionary 'no risk' assessment or even the substance of the rules adopted regarding that assessment." Id. The Court therefore concluded that it had jurisdiction to review all of Bakran's claims.

Defendants then moved for summary judgment, which the District Court granted. On the APA claims, the Court ruled that (1) the agency's adoption of a beyond-any-reasonable-doubt standard was not ultra vires[2] under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984), Bakran v. Johnson, 192 F. Supp. 3d 585, 601 (E.D.

---

[2] Bakran's ultra vires claim, pursuant to 5 U.S.C. § 706(2)(C), alleges that the USCIS took action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ." 5 U.S.C. § 706(2)(C); see also *Ultra Vires*, Black's Law Dictionary (10th ed. 2014) (stating that "ultra vires" means "[u]nauthorized; beyond the scope of power allowed or granted . . . by law").

7

Pa. 2016); (2) the assessment of risk after filing and presumption of denial, per the Neufeld Memo, were not arbitrary and capricious, id. at 598-99; and (3) the Aytes and Neufeld Memos qualify as "interpretive rules" that do not require notice-and-comment rule-making," id. at 599-600. On the constitutional claims, the Court concluded that the AWA was neither punitive nor impermissibly retroactive, id. at 594-95, and Bakran's due process claim failed because the AWA does not infringe his fundamental constitutional right to marry, id. at 595-97. Bakran appeals.

II[3]

A

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, there are no disputed facts. The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

8

We first address whether we have subject matter jurisdiction over Bakran's claim that the Secretary violated the APA by imposing a beyond-any-reasonable-doubt burden of proof and a presumption of denial of AWA applications, as expressed in the Aytes and Neufeld Memos.

District courts have jurisdiction to review agency action under 28 U.S.C. § 1331, "subject only to preclusion-of-review statutes created or retained by Congress." Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 126 (3d Cir. 2012) (quoting Califano v. Sanders, 430 U.S. 99, 105 (1977)). The APA bars judicial review where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The INA provides that "no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The INA's "jurisdiction–stripping language . . . applies not to all decisions the [Secretary] is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary]'s discretion." Alaka v. Att'y Gen. of U.S., 456 F.3d 88, 95 (3d Cir. 2006). Of relevance here, the AWA states that a citizen, such as Bakran, convicted of a specified offense may not file a petition for immediate relative status "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The AWA therefore precludes judicial review of the Secretary's no-risk determination concerning a specific citizen.

The issue here is whether the two procedures set forth in the Aytes and Neufeld Memos are themselves reviewable. Bakran argues that the Secretary, through the USCIS, acted ultra vires in imposing upon citizen petitioners a requirement that they prove beyond any reasonable doubt that they pose no risk to the alien beneficiary and by informing field officers that granting permission to file petitions on the beneficiaries' behalf should be rare.[4] Our authority to review these claims depends on whether the standard of proof and rareness directive are part of the Secretary's statutorily-granted unreviewable discretion. To make this decision, we examine the statute's language to identify the boundaries of the discretion granted to the agency.

The INA and Alaka instruct that courts lack jurisdiction to review decisions that are within the Secretary's sole discretion. Id. § 1252(a)(2)(B)(ii); Alaka, 456 F.3d at 95. The AWA states that the Secretary has sole and unreviewable discretion when it "determines" that a citizen petitioner poses no risk to the alien for whom the petition is filed. The choice of the word "determines" frames the matters within this discretion. The word "determine" means "to fix conclusively or authoritatively" as well as "to come to a decision concerning as the result of investigation or reasoning." Webster's Third New International Dictionary 616 (1993). Congress's use of the word "determines" therefore grants the Secretary unreviewable discretion in both concluding that a petitioner poses no risk and the process by which the Secretary reaches this decision. Thus, the exercise of discretion includes

---

[4] Bakran raised arbitrary-and-capricious claims in his complaint but abandons those claims on appeal.

deciding the type of proof required, the evidentiary standard a petitioner must satisfy, and whether the petitioner's evidence meets that standard. Because these considerations are inextricably intertwined with how and whether to exercise that discretion, and § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security," we are precluded from reviewing both the decision and process for reaching it. See Gebhardt v. Nielsen, 879 F.3d 980, 984-85, 987 (9th Cir. 2018) (holding that courts lack jurisdiction to review challenges to the beyond-any-reasonable-doubt standard and the requirement of a no-risk determination, among other claims; "each one challenges how the Secretary exercises—or has exercised—his or her 'sole and unreviewable discretion' to adjudicate I-130 petitions" (emphasis in original)); Roland v. U.S. Citizenship & Immigration Servs., 850 F.3d 625, 630 (4th Cir. 2017) (concluding that courts lack jurisdiction to review petitioner's APA challenge based in part on that Circuit's precedent that "relevant determinations 'cannot be divorced from the denial [of an application to adjust status] itself'" (quoting Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 620 (4th Cir. 2010))); Bremer v. Johnson, 834 F.3d 925, 930-31 (8th Cir. 2016) (holding that courts lack jurisdiction over an APA claim that the USCIS exceeded its statutory authority by requiring applicants to prove beyond any reasonable doubt that they pose no risk to beneficiaries because the claim "challenge[d] how the Secretary, acting through the USCIS, has exercised his discretion to make a no-risk determination under the [AWA]"); Struniak v. Lynch, 159 F. Supp. 3d 643, 654 (E.D. Va. 2016) (holding that "§ 1252(a)(2)(B)(ii) strips courts of jurisdiction to review both

the ultimate decision that is discretionary and the steps that are a necessary and ancillary part of reaching the ultimate decision"); cf. Jilin Pharm. USA v. Chertoff, 447 F.3d 196, 204 (3d Cir. 2006) (observing that an agency's determination of whether good cause to revoke a visa exists in a particular case also includes "what constitutes such cause in the first place," and that the good cause determination is within the agency's unreviewable discretion (citation and internal quotation mark omitted)).

For these reasons, federal courts lack jurisdiction to review the burden of proof and rareness directives that guide the Secretary's determination concerning whether a petitioning sex offender poses no risk to the beneficiary of his or her petition.[5]  Thus, the District Court should have dismissed

---

[5] Our ruling here does not render each and every one of the Secretary's actions immune from review.  We are cognizant that there is a "strong presumption in favor of judicial review of administrative action."  INS v. St. Cyr, 533 U.S. 289, 298 (2001); see also, e.g., Hanna v. Phila. Asbestos Co., 743 F.2d 996, 999 (3d Cir. 1984) ("[A] statute should not be interpreted as precluding judicial review absent clear evidence of Congressional intent." (citing Johnson v. Robison, 415 U.S. 361, 373-74 (1974))).  As a result, we are not holding that a court lacks jurisdiction to review an action beyond the authority Congress granted to the agency, which the Government concedes would be reviewable, Oral Arg. at 27:14-27:25, http://www2.ca3.uscourts.gov/oralargument/audio/16-3440Bakranv.SecretaryUnitedStatesDepartmentofHomelandSecurity.mp3, or an action that would violate the Constitution, see, e.g., Bartlett v. Bowen, 816 F.2d 695, 698-99, 703-07

Bakran's APA claims, and we will therefore vacate the order granting summary judgment in favor of Defendants on Bakran's APA claims and remand with a directive that the District Court dismiss these claims.

B

1

Bakran also makes two challenges to the AWA: the AWA violates his substantive due process right to marry,[6] and the AWA is impermissibly retroactive. Unlike Bakran's APA challenges to the Secretary's actions, we have jurisdiction to review these challenges to the statute. See Johnson v. Robison, 415 U.S. 361, 367 (1974); Kreschollek v. S. Stevedoring Co., 78 F.3d 868, 873-74 (3d Cir. 1996).

2

Bakran asserts that by barring him from petitioning to adjust his foreign spouse's immigration status, the AWA infringes his right to marry because it deprives him of benefits

_____

(D.C. Cir. 1987) (construing § 1252(a)(2)(B)(ii) to permit judicial review of constitutional claims because concluding that Article III courts lack jurisdiction to do so would raise constitutional concerns since Congress would be allowed to legislate and judge the constitutionality of its actions). Rather, we hold here only that we lack jurisdiction to review Bakran's claims pertaining to the Aytes and Neufeld Memos.

[6] Bakran's complaint also alleged a violation of his procedural due process rights, but he has not pursued that claim on appeal.

13

flowing from his marriage, including the ability to live with his spouse in the United States. The due process guarantees of the Fifth Amendment "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02 (1993) (emphasis omitted). The right to marry is one such fundamental right. Obergefell v. Hodges, 135 S. Ct. 2584, 2604 (2015); Loving v. Virginia, 388 U.S. 1, 12 (1967).

The AWA's restriction on a convicted sex offender's ability to sponsor his spouse's immigration petition does not infringe the fundamental right to marry. Citizens like Bakran are not barred from marrying, and in fact Bakran has married. Recognizing this, Bakran asserts that the AWA interferes with his ability to live in the United States with his foreign spouse. Thus, he asserts that he has a constitutional right to sponsor his foreign spouse's immigration application. His assertion fails for several reasons.

First, cognizant of Congress's plenary authority to set the conditions for an alien's entry into the United States, see, e.g., United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950), no court has recognized that a citizen spouse has a constitutional right to have his or her alien spouse reside in the United States, see Gebhardt, 879 F.3d at 988 ("Boiled down, Plaintiff's theory is that he has a fundamental right to reside in the United States with his non-citizen [spouse]. But that theory runs headlong into Congress' plenary power over immigration."); Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006) (holding that "[t]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse

14

remain in the country" (alteration in original ) (quoting Almario v. Att'y Gen., 872 F.2d 147, 151 (6th Cir. 1989))); Burrafato v. U.S. Dep't of State, 523 F.2d 554, 555 (2d Cir. 1975) (holding that a citizen spouse has no constitutional right to seek to bar the deportation of an alien spouse); Silverman v. Rogers, 437 F.2d 102, 107 (1st Cir. 1970) (same); Swartz v. Rogers, 254 F.2d 338, 339 (D.C. Cir. 1958) (same); cf. Moralez-Izquierdo v. Dep't of Homeland Sec., 600 F.3d 1076, 1091 (9th Cir. 2010) (concluding that the denial of adjustment of status did not violate any of the petitioner's or his family's substantive rights, where the petitioner argued that the denial violated their right to live together as a family in the United States), abrogated in part on other grounds by Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir. 2012) (en banc).[7]

---

[7] Bakran argues that the dissent in Kerry v. Din, 135 S. Ct. 2128 (2015), along with Justice Kennedy's opinion for the majority in Obergefell, support his view that his due process rights have been infringed. Bakran is incorrect. First, although Obergefell reaffirmed the fundamental right to marry, see 135 S. Ct. at 2598-2605, 2608, that case does not stand for the proposition that Bakran has a fundamental right to petition for the lawful permanent resident status in the United States for his alien wife. Second, in Din, the Supreme Court focused on procedural rather than substantive due process rights, and Bakran has not pursued his procedural due process claim on appeal. See 135 S. Ct. at 2138 (plurality of Scalia, J., joined by Roberts and Thomas, JJ.) (holding that the denial of the visa application of the petitioner's husband did not deprive her of any life, liberty, or property, so she was not entitled to constitutional due process protections); id. at 2139 (Kennedy, J., concurring, joined by Alito, J.) (noting that even assuming Din had a protected liberty interest, the notice she received

Second, Bakran's sex offense conviction impacts his access to an immigration benefit, which is not limited to married persons. Put differently, unlike the benefits identified in Obergefell that are granted only to married couples, 135 S. Ct. at 2599-2601, the availability of this immigration benefit is not exclusively contingent on marriage because parents and children may seek the benefit. Thus, this immigration benefit does not fall within the types of marriage benefits that the Supreme Court identified that serve the goals marriage advances.

Third, Bakran is denied access to this immigration benefit because of his prior sex conviction. Limiting the rights of convicted felons has historical roots. See, e.g., 10 U.S.C. § 504(a) (ineligibility to serve in the armed forces, unless an exception is made); 18 U.S.C. § 922(g)(1) (restriction on possession of a firearm); 21 U.S.C. § 862 (providing that individuals convicted of drug offenses may be denied federal benefits including grants, contracts, loans, professional licenses, and commercial licenses); 28 U.S.C. § 1865(b)(5) (restriction on right to serve on federal grand and petit juries unless the individual's civil rights have been restored); McKune v. Lile, 536 U.S. 24, 38 (2002) (plurality opinion) ("[L]awful conviction and incarceration necessarily place limitations on the exercise of a defendant's privilege against self-incrimination."); Jones v. Helms, 452 U.S. 412, 418-23 (1981) (upholding restrictions on a felon's constitutionally

satisfied due process requirements); id. at 2142 (Breyer, J., dissenting, joined by Ginsburg, Sotomayor, and Kagan, JJ.) (concluding that the petitioner had a liberty interest in living with her husband in the United States "to which the Due Process Clause grants procedural protection").

16

protected right to travel); <u>Richardson v. Ramirez</u>, 418 U.S. 24, 56 (1974) (upholding a state law that disenfranchised convicted felons); <u>see also, e.g.</u>, <u>A.A. ex rel. M.M. v. New Jersey</u>, 341 F.3d 206, 208, 213 (3d Cir. 2003) (noting previous, unsuccessful constitutional challenges to New Jersey's Megan's Law and holding that any privacy interest sex offenders may have in their home addresses was substantially outweighed by the state's interest in protecting the public). Thus, once one sustains a felony conviction, consequences follow, including the loss of certain rights and government benefits. Bakran's loss of his ability to sponsor his spouse may impede his ability to assist her to adjust her status, but this impediment is no more burdensome than other limitations placed on convicted felons' constitutional rights.

In short, while the AWA restricts Bakran's access to certain immigration benefits because of his prior conviction, it does not deprive Bakran of his fundamental right to marry or a benefit uniquely available to married persons. As a result, the District Court correctly entered judgment in favor of Defendants on this claim.

3

Bakran's second argument attacking the AWA also lacks merit. In his complaint, Bakran asserted that the AWA violates the Ex Post Facto Clause, U.S. Const. art. I § 9, cl. 3, which applies only to penal legislation that applies retroactively, <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 266 n.19 (1994); <u>Myrie v. Comm'r, N.J. Dep't of Corrs.</u>, 267 F.3d 251, 255 (3d Cir. 2001); <u>see also</u> <u>Weaver v. Graham</u>, 450 U.S. 24, 29 (1981). Bakran's abandonment of his Ex Post Facto claim on appeal reflects his acknowledgment that the AWA is

not penal.[8]    Relying on the general principle of anti-retroactivity, and statutory construction, he claims that the AWA is impermissibly retroactive because it attaches new legal consequences to his prior conviction.

When examining retroactivity, we ask "whether Congress has expressly provided that the statute should be retroactive." Atkinson v. Att'y Gen. of U.S., 479 F.3d 222, 226 (3d Cir. 2007) (citing Landgraf, 511 U.S. at 280). "If the answer is yes, our inquiry is over." Id. If the statute does not have any express statement of retroactivity, then we must determine whether "normal rules of statutory construction unequivocally remove the possibility of retroactivity." Id. (emphasis omitted). If there is no express command or intent to apply the statute only prospectively, then we must determine whether applying the statute to events predating its enactment would have a retroactive effect. Landgraf, 511 U.S. at 280; Atkinson, 479 F.3d at 226. An act has retroactive effect if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." Atkinson, 479 F.3d at 227 (quoting INS v. St. Cyr, 533 U.S. 289, 321 (2001)). If the

---

[8] The AWA's stated purpose is to protect children and the public at large from sex offenders, 42 U.S.C. §§ 16901, 16935(3), and the Supreme Court has said that "restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded,'" Smith v. Doe, 538 U.S. 84, 93 (2003) (quoting Kansas v. Hendricks, 521 U.S. 346, 363 (1997)); accord Bremer, 834 F.3d at 932. Thus, the AWA is not penal.

statute has a retroactive effect, "we employ the strong presumption against applying such a statute retroactively." Id. at 226 (citation and internal quotation marks omitted).

The AWA neither expressly provides that it should apply retroactively nor unequivocally removes the possibility of it being applied retroactively. It does, however, suggest that Congress intended for past events to impact a citizen's ability to invoke benefits under the INA. For instance, § 1154(a)(1)(A)(viii)(I) states that the provision allowing citizens to file family-based petitions does not apply to a citizen "who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The use of "has been" suggests that the AWA applies to persons who were convicted before its enactment. Thus, Congress appears to have intended for the Secretary to consider events that predate the statute.

The statute's focus, however, is on "dangers that arise postenactment." Vartelas v. Holder, 566 U.S. 257, 271 n.7 (2012). "[S]pecifically," the AWA addresses "the dangers that convicted sex offenders may pose to new immigrants." Bremer, 834 F.3d at 932; see also, e.g., Gebhardt, 879 F.3d at 986 (concluding that Congress enacted the AWA "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of . . . child crime victims" (quoting AWA, 120 Stat. at 587) (emphasis omitted); "[t]o that end, the entire scheme focuses on prevention—not punishment"); Suhail v. U.S. Att'y Gen., No. 15-cv-12595, 2015 WL

19

7016340, at \*9 (E.D. Mich. Nov. 12, 2015) (concluding that application of the AWA was "a civil matter to prevent future additional sex offenses against children"); <u>Matter of Jackson</u>, 26 I. & N. Dec. 314, 318 (B.I.A. 2014) ("Because the Adam Walsh Act addresses the potential for future harm posed by such sexual predators to the beneficiaries of family-based visa petitions, we find that the application of its provisions to convictions that occurred before its enactment does not have an impermissible retroactive effect."). The AWA therefore resembles, for example, "laws prohibiting persons convicted of a sex crime against a victim under 16 years of age from working in jobs involving frequent contact with minors" in that the wrongful activity targeted by the statute is the potential future conduct rather than the past offense. <u>Vartelas</u>, 566 U.S. at 271 n.7. The no-risk provision bolsters the conclusion that the statute's purpose is preventing post-enactment danger as opposed to attaching a new disability. For these reasons, the AWA "do[es] not operate retroactively." <u>Id.</u> Therefore, the District Court correctly rejected Bakran's retroactivity argument.

III

For the foregoing reasons, we will affirm in part, with respect to Bakran's constitutional claims, and we will vacate in part, with respect to his APA claims, and remand with directions to dismiss the APA claims.

20