IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 17-15787

_____

D.C. Docket No. 9:17-cv-8027-RLR

DOUGLAS BOURDON,

Plaintiff - Appellant,

versus

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY (DHS),
JEH CHARLES JOHNSON, Secretary of DHS,
LORETTA LYNCH, Attorney General of
the United States,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS),
LEON RODRIGUEZ, Director of the USCIS,
TONY BRYSON, District Director,
District 10, USCIS,
LAURA CASTILLO, Acting Field Office Director,
West Palm Beach Field Office, USCIS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before WILLIAM PRYOR, Chief Judge, WILSON, MARTIN, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, and BRASHER, Circuit Judges.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting rehearing en banc, it is ORDERED that this case will not be reheard en banc.

GRANT, Circuit Judge, concurring in the denial of rehearing en banc:

A majority of the Court voted against en banc review in this case. I believe that was the right call. For the reasons I explained in the panel opinion, the Adam Walsh Act prevents us from reviewing Bourdon's claim. *See Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537 (11th Cir. 2019). I see no need to repeat those arguments here. But I cannot let today's dissent go entirely unanswered. While there is more to take issue with, I will limit myself to a few points.

To begin, I agree with the dissent that there is a "strong presumption" in favor of judicial review. *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)). But that presumption is rebutted when a "statute's language or structure demonstrates that Congress wanted an agency to police its own conduct." *Id.* And that is precisely what the Adam Walsh Act did by making the Secretary's discretion "sole and unreviewable." 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

The dissent sees things differently. It argues that *Bourdon* went against Supreme Court precedent, contending that the Court has not found preclusion "even in the face of statutes that do directly address judicial review." Dissenting Op. at 15. To support this point, the dissent—mistakenly—relies on three Supreme Court cases.

3

The first is *Traynor v. Turnage*, 485 U.S. 535 (1988). According to the dissent, the statute in *Traynor* did not overcome the presumption against preclusion despite its "clear statement withdrawing judicial review." Dissenting Op. at 16. In reality, though, the Court never addressed whether the statute's language precluding judicial review was sufficient to do so. It did not have to. That's because its holding was that a statute blocking judicial review of certain decisions under veterans' benefits laws administered by the Veterans Administration did not also block judicial review of claims arising under a different sort of law, one that applied to all federal agencies. *Traynor*, 485 U.S. at 543–45. Simply put, the claim in *Traynor* did not arise under one of the statutes that fell within the preclusion provision. That is an unremarkable proposition—and not the one the dissent identifies.

The dissent's only other cases—*INS v. St. Cyr*, 533 U.S. 289 (2001), and *Demore v. Kim*, 538 U.S. 510 (2003)—also fail to prove its point. Those two cases are about *habeas* review, not judicial review. And that matters. After all, courts have recognized a "longstanding distinction" between the two. *St. Cyr*, 533 U.S. at 312 n.35. But the preclusion of habeas review and the "serious and difficult" constitutional issue that such preclusion would raise are not present here, so *St. Cyr* and *Demore* have little to teach us in this case. *Id.* at 305. Not only is the would-be beneficiary of judicial review here not seeking release from custody, or even

4

relief from deportation, he is seeking nearly the opposite—entry of a second person into the United States.

Even so, the dissent argues that these habeas cases direct our holding here. On its reading, by permitting *habeas* review in *St. Cyr* despite "seemingly ironclad language" precluding it, the Supreme Court has barred our holding on *judicial* review in *Bourdon*. Dissenting Op. at 17. Not so.

The dissent itself seems to spot the daylight between those cases and this one. After analyzing the three cases at length, it backpedals, asserting that it is "of no moment" that the cited cases are not on point. The real purpose, it says, is to show that the statutes interpreted in those cases (whether or not relevant) had language that explicitly precluded "judicial review"—and even they were unsuccessful at doing so. *Id.* at n.2. The dissent argues that the Adam Walsh Act, in contrast, "says nothing about judicial review." *Id.* at 18. But that's just not so. I do not see how the Adam Walsh Act's forceful language conferring "sole and unreviewable" discretion to the Secretary is anything less than "explicit" that the federal judiciary cannot interfere in the Secretary's determinations. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). I take Congress at its word—Bourdon's claim is unreviewable, so courts lack jurisdiction to review it.

This Court is not the only one to say so. In fact, every circuit to consider this issue has disclaimed jurisdiction over claims like Bourdon's. *See Bakran v.*

5

*Sec'y, U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 562–64 (3d Cir. 2018); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 378–82 (6th Cir. 2017); *Roland v. U.S. Citizenship & Immigr. Servs.*, 850 F.3d 625, 628–30 (4th Cir. 2017); *Bremer v. Johnson*, 834 F.3d 925, 929–31 (8th Cir. 2016). And although the dissent tries to differentiate this case from those, it cannot argue with a more basic point: we all agree that courts lack jurisdiction over these claims.

For these reasons and those stated in the panel opinion, I stand by that decision.

MARTIN, Circuit Judge, joined by JORDAN and JILL PRYOR, Circuit Judges, dissenting from the denial of rehearing en banc:

I write in dissent because I believe the panel opinion in Bourdon v. U.S. Department of Homeland Security, 940 F3d 537 (11th Cir. 2019), errs both in its method of interpretation and the result it reached. The panel ruled that Douglas Bourdon can have no judicial review of the Secretary of Homeland Security's decision to deny his petition for a visa for his wife. In so ruling, the panel relied on the wrong provision of the Administrative Procedure Act ("APA"). Nothing in the statute at issue in Mr. Bourdon's case explicitly "preclude[s] judicial review" under the APA, 5 U.S.C. § 701(a)(1). As a result, this court has jurisdiction to review Mr. Bourdon's claim that the agency acted arbitrarily and capriciously by failing to adhere to its own internal procedures.

For this reason, and the reasons stated in Judge Jordan's compelling dissenting opinion, I respectfully dissent from the court's denial of en banc rehearing.

## I.    Background

### A. Statutory Framework

Under 8 U.S.C. § 1154(a)(1)(A)(i), "any citizen of the United States" may file a petition with the Attorney General seeking immigrant status on behalf of his non-citizen immediate family members. In 2006, Congress amended § 1154 to

7

provide an exception for citizens who have been "convicted of a specified offense against a minor." Pub. L. No. 109-248, § 402 (2), 120 Stat. 587 (codified at 8 U.S.C. § 1154(a)(1)(A)(viii)(I) (the "Adam Walsh Act" or the "Act")). Citizens with these convictions are allowed to petition for immigrant status on behalf of a relative if the Secretary of Homeland Security (the "Secretary"), in his "sole and unreviewable discretion, determines that the citizen poses no risk to the" noncitizen on whose behalf the petition is filed. Id.

A separate statute, 8 U.S.C. § 1252(a)(2)(B)(ii), also precludes judicial review of discretionary immigration decisions:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

But I will discuss why neither the Adam Walsh Act nor § 1252 provides a basis for the majority's conclusion.

## B. Factual Background and Procedural History

Douglas Bourdon was convicted in 2003 of possession of child pornography under 18 U.S.C. § 2252(a)(4)(B). This conviction is a "specified offense" under the Adam Walsh Act. See 8 U.S.C. § 1154(a)(1)(A)(viii)(II); 34 U.S.C. § 20911(7)(G). In May 2008, when he was 63 years old, Mr. Bourdon married Thi Thuan Tran, who is a 59-year-old citizen of Vietnam. The next month, Mr.

8

Bourdon submitted an I-130 Petition for Alien Relative on Ms. Tran's behalf. Following an in-person interview with Mr. Bourdon and Ms. Tran, the United States Citizenship and Immigration Services ("USCIS") asked Mr. Bourdon for supplemental documentation reflecting that he poses no risk to his wife. The evidence submitted by Mr. Bourdon in response to this request included an affidavit from Ms. Tran and reports from a social worker stating that Mr. Bourdon had made great strides in his rehabilitation. Nevertheless, on December 4, 2009, USCIS denied Mr. Bourdon's petition because he did not demonstrate "beyond a reasonable doubt" that he posed no risk to Ms. Tran's safety.

Following an appeal and remand for further development of the record, USCIS again denied Mr. Bourdon's petition. USCIS reaffirmed its denial on the basis that Mr. Bourdon had not proved "beyond a reasonable doubt" that he posed no risk to Ms. Tran. USCIS also premised its denial on the fact that Mr. Bourdon had visited Vietnam and Thailand during the pendency of his petition. According to USCIS, this travel was "disturbing" because, in its view, Vietnam and Thailand are "countries that have literally no child protection laws and where child pornography, child prostitution, and child sex tourism are . . . tolerated by their respective governments." USCIS referenced "[c]ountry reports by U.S. Department of State, UNHCR, World Relief, UNICEF, UN-ACT etc." in reaching this decision. Mr. Bourdon was not able to inspect and rebut these reports before

9

USCIS issued its decision denying his petition.  Mr. Bourdon attests that he was visiting and vacationing with Ms. Tran during these four visits.

Mr. Bourdon filed this federal lawsuit challenging the denial of his petition. In relevant part, he alleges USCIS's decision violated the APA in two ways:

1)  USCIS binding precedent requires a petitioner in immigration proceedings to prove his eligibility "by a preponderance of the evidence," not beyond a reasonable doubt.

2)  USCIS regulations require the agency to permit petitioners to "inspect the record of proceeding which constitutes the basis for the decision." Mr. Bourdon was not permitted to inspect or rebut the country reports before USCIS relied on them in denying his petition.

The District Court granted the government's motion to dismiss, holding that § 1252(a)(2)(B)(ii) divests the judiciary of the ability to review the so-called "no-risk" determination.  Bourdon v. Sessions, No. 9:17-CV-80207-RLR, 2017 WL 5187833, at *3 (S.D. Fla. Nov. 9, 2017).  The District Court found that USCIS's "decision" regarding the no-risk determination encompasses "the manner in which USCIS made that determination," including the burden of proof.  Id. at *4–5.  A divided panel of this Court affirmed the District Court.  Bourdon v. U.S. Dep't of Homeland Sec. (DHS), 940 F.3d 537, 549 (11th Cir. 2019).

## II.    Whether the Adam Walsh Act Precludes All Judicial Review

My disagreement with the decision in Mr. Bourdon's case is about whether, as the majority concluded, the Adam Walsh Act contains "explicit jurisdiction-stripping language."  Bourdon, 940 F.3d at 546 n.4.  It does not.

10

I begin by examining the APA's statutory framework and then show why the majority relied on the wrong provision of the APA in reaching its conclusion.

A. Section 701(a)(1) and (2) of the APA

1. APA Overview

The APA creates a "basic presumption of judicial review" for anybody who is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." Abbott Labs. v. Gardner, 387 U.S. 136, 140, 87 S. Ct. 1507, 1511 (1967) (quotation marks omitted); see 5 U.S.C. § 702. The presumption that judicial review is available for agency action is "strong." Mach Mining, LLC v. EEOC, 575 U.S. 480, 486, 135 S. Ct. 1645, 1651 (2015) (quotation marks omitted).

That presumption in favor of judicial review is rebuttable only if the relevant statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), or if the action is "committed to agency discretion by law," id. § 701(a)(2). See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 586 U.S. ___, 139 S. Ct. 361, 370 (2018). "But the agency bears a heavy burden in attempting to show that Congress prohibited all judicial review of the agency's compliance with a legislative mandate." Mach Mining, 575 U.S. at 486, 135 S. Ct. at 1651 (alteration adopted and quotation marks omitted).

11

Statutory preclusion of judicial review under § 701(a)(1) may be explicit or implicit: "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345, 104 S. Ct. 2450, 2453–54 (1984). Either way, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Labs., 387 U.S. at 141, 87 S. Ct. at 1511. Intent to preclude must be "fairly discernible in the statutory scheme," meaning, after reviewing all relevant evidence, the court cannot be left with "substantial doubt" about Congress's intent to preclude all judicial review of the agency action. Block, 467 U.S. at 351, 104 S. Ct. at 2456–57 (quotation marks omitted).

Those cases for which judicial review is precluded because agency action was "committed to agency discretion" under § 701(a)(2) are even rarer. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S. Ct. 814, 820 (1971) (characterizing § 701(a)(2) as a "very narrow exception"). To avoid the anomalous result that renders a court unable to "determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable," application of § 701(a)(2) has been restricted to "those rare circumstances where the relevant statute is drawn so that a court would have no

12

meaningful standard against which to judge the agency's exercise of discretion." Weyerhaeuser Co., 139 S. Ct. at 370 (quotation marks omitted); see Dep't of Commerce v. New York, 588 U.S. ___, 139 S. Ct. 2551, 2569 (2019) (asking if the statute leaves "no law to apply" (quoting Overton Park, 401 U.S. at 410, 91 S. Ct. at 821)).  Use of this exception is "generally limited . . . to certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion, such as a decision not to institute enforcement proceedings or a decision by an intelligence agency to terminate an employee in the interest of national security."  Dep't of Commerce, 139 S. Ct. at 2568 (citations and quotation marks omitted).

## 2.  The Majority's Approach

Mr. Bourdon sued USCIS, alleging it violated its own procedures in evaluating his I-130 petition.  Our court affirmed the denial of any review of Mr. Bourdon's claims, saying that the Adam Walsh Act explicitly precludes judicial review of such claims.  Bourdon, 940 F.3d at 546 & n.4; see id. at 542, 548. Indeed, the panel ruled against Mr. Bourdon based on the text of the Adam Walsh Act itself, 8 U.S.C. § 1154(a)(1)(A)(viii)(I).  That is, the panel relied on the Act's language that no-risk determinations are within the Secretary's "'sole and unreviewable discretion.'"  Bourdon, 940 F.3d at 542, 546 & n.4 (quoting 8 U.S.C. § 1154(a)(1)(A)(viii)(I)).

13

Based on a straightforward reading of the text, this provision of the Adam Walsh Act—concerning "sole and unreviewable discretion"—means what it logically suggests. That is, it precludes judicial review under § 701(a)(2), where "agency action is committed to agency discretion by law." But in ruling that USCIS's denial of Mr. Bourdon's petition is unreviewable, the majority instead relied on § 701(a)(1), which applies where "statutes preclude judicial review." See Bourdon, 940 F.3d at 542 (citing to 5 U.S.C. § 701(a)(1)). The panel's opinion provides no legal basis for relying upon a statute that requires preclusion of judicial review, and I have otherwise found no basis for it.

### 3. Why Doesn't the Adam Walsh Act "Preclude[] Judicial Review"?

#### a. There is no explicit preclusion.

When Congress wants to explicitly preclude judicial review, it knows how to do it. See DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503, 505–06 (D.C. Cir. 2019) ("When Congress provides that 'there shall be no administrative or judicial review' of specified agency actions, its intent to bar review is clear . . . ." (quoting 42 U.S.C. § 1395nn(i)(3)(I))). There is an abundance of examples of statutes that explicitly preclude judicial review, all of which actually say the action in question is not subject to "judicial review" (or a variation of this).[1]

---

[1] See, e.g., PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 588 U.S. ___, 139 S. Ct. 2051, 2059 (2019) (Kavanaugh, J., concurring in the judgment) (collecting statutes that

14

A simple grant of agency discretion—even broad discretion—is not sufficiently "definitive" evidence that Congress intended to preclude all judicial review.  See Ctr. for Auto Safety v. Dole, 828 F.2d 799, 806 (D.C. Cir. 1987), vacated on reh'g on other grounds, 846 F.2d 1532 (D.C. Cir. 1988).  That being the case, in Center for Auto Safety, the D.C. Circuit held that the type of judicial review sought by Mr. Bourdon here, that is review of "whether the agency has adhered to its own legally binding standards," is available even where there is a statutory grant of discretion.  828 F.2d at 806.  And while the original panel opinion for Center for Auto Safety came to be vacated, the reissued opinion adhered to the view that "nothing in the Act remotely resembl[ed] an express preclusion of review."  846 F.2d at 1535.

Indeed, when it comes to explicit preclusion, the Supreme Court has consistently imposed a high bar for denying judicial review.  And the Court has done this even in the face of statutes that do directly address judicial review.  For example, in Traynor v. Turnage, 485 U.S. 535, 108 S. Ct. 1372 (1988), the Court

---

"expressly preclude judicial review," including the Clean Water Act, which expressly states that certain agency orders "shall not be subject to judicial review in any civil or criminal proceeding for enforcement," 33 U.S.C. § 1369(b)(2); the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, which expressly states that certain agency orders "shall not be subject to judicial review in any civil or criminal proceeding for enforcement," 42 U.S.C. § 9613(a); and the Clean Air Act, which also expressly states that certain agency orders "shall not be subject to judicial review in civil or criminal proceedings for enforcement," id. § 7607(b)(2)).

15

considered a statute that barred judicial review of "the decisions of the Administrator [of the Veterans' Administration] on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans." Id. at 539, 108 S. Ct. at 1377 (quoting 38 U.S.C. § 211(a) (1988)) (quotation marks omitted). The statute also expressly provided that "no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." Id. at 539 n.3. Despite this clear statutory text, the Court unanimously held that discrimination claims under the Rehabilitation Act were not removed from court review. The Court explained that this type of question would not "enmesh the courts in the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions or burden the courts and the Veterans' Administration with expensive and time-consuming litigation." Id. at 544, 108 S. Ct. at 1380 (quotation marks omitted). The statutory text—even with a clear statement withdrawing judicial review—was not enough to overcome the presumption against preclusion.

In another, more recent example, the Supreme Court confronted a provision of the immigration laws (entitled "[m]atters not subject to judicial review"), which stated: "'Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable

16

by reason of having committed' certain enumerated criminal offenses." INS v. St. Cyr, 533 U.S. 289, 311, 121 S. Ct. 2271, 2285 (2001) (alteration in original) (quoting 8 U.S.C. § 1252(a)(2)(C) (2000)), superseded by statute on other grounds, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310, as recognized in Nasrallah v. Barr, 590 U.S. ___, 140 S. Ct. 1683, 1690 (2020).  What's more, the section of the relevant congressional enactment was entitled "[e]limination of [c]ustody [r]eview by [h]abeas [c]orpus." Id. at 308, 121 S. Ct. at 2284.  And yet, despite this seemingly ironclad language, the Court held there was no "clear, unambiguous, and express statement of congressional intent to preclude judicial consideration" via habeas corpus.  Id. at 314, 121 S. Ct. at 2287.

A similar result occurred in Demore v. Kim, 538 U.S. 510, 123 S. Ct. 1708 (2003).  The Court there permitted a challenge to the "framework" of immigrant detention without bail in spite of statutory language eliminating judicial review of "[t]he Attorney General's discretionary judgment regarding the application of th[e] section." Id. at 516–17, 123 S. Ct. at 1714 (quoting 8 U.S.C. § 1226(e)).[2]

---

[2] The fact that these cases address judicial review of a regulation (Traynor), or the availability of habeas review (St. Cyr and Kim) is of no moment.  They are, after all, cases of statutory interpretation.  Moreover, the important background principle in St Cyr.,—the strong presumption in favor of judicial review of agency action, see id. at 533 U.S. at 298, 121 S. Ct. at 2278—is also present here.  Thus, the point is simply that the statutes in those cases had explicit waivers of judicial review (which, even then, did not prevent the Supreme Court from holding that judicial review was appropriate).  In contrast, the Adam Walsh Act contains nothing approaching an explicit waiver.  See also Patel v. U.S. Att'y Gen., 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc) (noting that the statute at issue "explicitly lists certain '[m]atters [that are] not subject to judicial review'").

17

The Adam Walsh Act itself says nothing about judicial review. Instead, the Act grants "sole and unreviewable discretion" to the Secretary to make no-risk determinations. This language is not enough to support a finding of explicit preclusion of judicial review. And yet, Mr. Bourdon's panel held—without any further analysis—that the Act contains "explicit jurisdiction-stripping language." Bourdon, 940 F.3d at 546 n.4; see id. at 548 ("[T]he Adam Walsh Act . . . contains its own jurisdiction-stripping provision . . . ."). I know of no other case in our Court or the Supreme Court in which the court found explicit preclusion under § 701(a)(1) when the statute lacked any text even discussing judicial review.[3]

Given the "strong presumption" in favor of judicial review, the lack of any mention of judicial review in the Adam Walsh Act, and the high bar for preclusion imposed by the Supreme Court even when a statute contains express preclusive

The concurrence in the denial of rehearing en banc insists it has only done what other circuits have as well. Concurring Op. at 5–6 (citing cases). That, too, is incorrect. Of the cases the concurrence cites, only one relies on § 701(a)(1). See Bremer v. Johnson, 834 F.3d 925, 929–31 (8th Cir. 2016). The others—reflecting the weight of out-of-circuit authority—do not. See Bakran v. Sec'y, U.S. Dep't of Homeland Sec., 894 F.3d 557, 562–64 (3d Cir. 2018) (analyzing whether the challenged decision was committed to agency discretion and without relying on § 701(a)(1)); Gebhardt v. Nielsen, 879 F.3d 980, 987 (9th Cir. 2018) (analyzing whether the challenged decision was precluded from judicial review without relying on § 701(a)(1)); Privett v. Sec'y, Dep't of Homeland Sec., 865 F.3d 375, 378–82 (6th Cir. 2017) (same); Roland v. U.S. Citizenship & Immigr. Servs., 850 F.3d 625, 628–30 (4th Cir. 2017) (same).

[3] Perhaps that is why the District Court in this case held that judicial review was foreclosed by § 701(a)(2), not (1). See Bourdon, 2017 WL 5187833, at *3.

18

language, it cannot properly be said that the Act explicitly precludes judicial review under § 701(a)(1) of the APA.

>    b.  There is also no implicit preclusion.

The majority briefly alludes to the possibility that a statute can implicitly preclude judicial review.  See Bourdon, 940 F.3d at 546 (stating that judicial review may be prohibited "even when the statute lacks any explicit jurisdiction-stripping language and context is the primary indicator of congressional intent to bar judicial review").[4]  As set forth above, the majority does not rely on or discuss implicit preclusion.  Id. at 546 n.4 (stating that Bourdon "centers on the explicit jurisdiction-stripping language in the statute").  And although the majority does not reach this point, it also clear that the Adam Walsh Act does not implicitly preclude judicial review.  Unlike other statutes that preclude judicial review by implication, the Adam Walsh Act does not contain a separate review process intended by Congress to replace review in the federal courts.  See Block, 467 U.S. at 349, 104 S. Ct. at 2456 (stating that implicit preclusion may be found "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons"); Hill v. SEC, 825 F.3d 1236, 1242–43 (11th Cir. 2016) (collecting cases).  For instance, in Morris v. Gressette, 432 U.S. 491, 97 S.

---

[4] This passing mention of implicit preclusion is, of course, dicta.  See United States v. Gillis, 938 F.3d 1181, 1198 (11th Cir. 2019) (per curiam).

19

Ct. 2411 (1977), the Supreme Court found implicit preclusion of judicial review based on the "nature of the [statutory] remedy," which was intended to be "an expeditious alternative to declaratory judgment actions." Id. at 501, 504, 97 S. Ct. at 2419–20. No such complex statutory scheme exists here.

If anything, the relationship between the Adam Walsh Act and the rest of the immigration laws implies that the Act does not preclude judicial review. As Mr. Bourdon points out in his petition for rehearing, the Adam Walsh Act's reference to "sole and unreviewable discretion," when read alongside § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision, may imply Congress only wanted to "bar[] administrative review of no-risk decisions by the BIA." That interpretation would certainly be consistent with the canon against surplusage. See Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 2331 (1979). Even if this reading is susceptible to another interpretation, preclusion cannot be said to exist where there is "substantial doubt about the congressional intent." Block, 467 U.S. at 351, 104 S. Ct. at 2456; see also El Paso Nat. Gas Co. v. United States, 750 F.3d 863, 888 (D.C. Cir. 2014) (finding no implicit preclusion where Congress explicitly foreclosed judicial review in other parts of the statute). And I find nothing in the Act's legislative history or other details of the legislative scheme that evinces a "fairly discernible" intent by Congress to preclude all judicial review. See Block, 467 U.S. at 349, 351, 104 S. Ct. at 2455–57.

20

Thus, the Adam Walsh Act neither explicitly nor implicitly precludes all judicial review of no-risk determinations.  For this reason, the Bourdon panel opinion was wrong to say that the Act "preclude[s] judicial review" within the meaning of the APA.  Instead, the Adam Walsh Act does what it says: the grant of "sole and unreviewable discretion" to the Secretary forecloses judicial review insofar as it "commit[s agency action] to agency discretion by law."  5 U.S.C. § 701(a)(2).

### B. Mr. Bourdon's Action

As discussed above, courts may apply § 701(a)(2) to preclude judicial review in only "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  Weyerhaeuser Co., 139 S. Ct. at 370 (quotation marks omitted).  I do not endeavor to apply this standard to all possible arguments for why judicial review is precluded in this case.  Rather, I turn my attention to the Accardi[5] doctrine, which I believe controls.

"Accardi stands for the unremarkable proposition that an agency must abide by its own regulations."  Chevron Oil Co. v. Andrus, 588 F.2d 1383, 1386 (5th Cir.

---

[5] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S. Ct. 499 (1954).

21

1979).[6]   Mr. Bourdon seeks simply to challenge the agency's failure to follow binding regulations.  I believe such a challenge is permissible under Accardi.  See Burdue v. FAA, 774 F.3d 1076, 1082 n.2 (6th Cir. 2014) ("Under the doctrine outlined in Accardi, a party may always challenge an agency's failure to abide by its own regulations.") (citation omitted); see Steenholdt v. FAA, 314 F.3d 633, 639 (D.C. Cir. 2003) ("The Accardi doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."); see also Service v. Dulles, 354 U.S. 363, 372, 77 S. Ct. 1152, 1157 (1957) (explaining that Accardi applies "even when the administrative action under review is discretionary in nature"); Bourdon, 940 F.3d at 552 (Jordan, J., dissenting) (discussing the application of Accardi).

The Bourdon opinion rejects the application of Accardi because the statute at issue there did not contain "any jurisdiction-stripping language."  Bourdon, 940 F.3d at 549.  But this reads Accardi too narrowly.  It may be true that, when a statute precludes all judicial review, review of Accardi claims is foreclosed.[7]

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

[7] As one district court recently noted, "the caselaw is far from clear" as to whether Accardi derives from the APA or the Constitution's guarantee of due process. See Jefferson v. Harris, 285 F. Supp. 3d 173, 185 (D.D.C. 2018).  For ease of analysis, I assume the doctrine is based on the APA.  But see Bourdon, 940 F.3d at 555 (Jordan, J., dissenting) (suggesting the Accardi principle is founded in constitutional due process concerns).  Of course, if Accardi were a constitutional doctrine, the Adam Walsh Act—which says nothing about constitutional relief—

Merrill, 74 Geo. Wash. L. Rev. at 605 ("If review is precluded by statute, then it stands to reason that review of Accardi claims is also precluded."); see Graham v. Ashcroft, 358 F.3d 931, 935 (D.C. Cir. 2004).  But as established above, Bourdon is not a case in which the statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1).  Rather, preclusion of review is based on the commitment of the substantive decision to agency discretion under § 701(a)(2).  And if an agency adopts rules to constrain its discretion—as USCIS did here—we know that it has "created law that can serve as the basis for judicial review of [its] actions." Merrill, 74 Geo. Wash. L. Rev. at 605; see Romano-Murphy v. Comm'r, 816 F.3d 707, 718 (11th Cir. 2016) (citing Kurapati v. U.S. Bureau of Citizenship & Immigration Servs., 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam)).

Indeed, the caselaw reflects a presumption that Accardi claims are available when final agency action is committed to agency discretion.  In Steenholdt, the D.C. Circuit analyzed the plaintiff's Accardi claim even though the action was "committed to agency discretion" within § 701(a)(2).  See 314 F.3d at 638–40.  So too was that the case in Lopez v. FAA, 318 F.3d 242 (D.C. Cir. 2003), which

would probably not preclude consideration of Accardi claims.  See Webster v. Doe, 486 U.S. 592, 603, 108 S. Ct. 2047, 2053 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."); see also Bourdon, 940 F.3d at 547 n.6 (declining to consider whether the Adam Walsh Act prohibits judicial review of constitutional claims).  For more on Accardi's doctrinal basis, see generally Thomas W. Merrill, The Accardi Principle, 74 Geo. Wash. L. Rev. 569 (2006).

23

distinguished between review of "the substance of the FAA's decision" (which was barred) and the plaintiff's "procedural claim that the FAA failed to follow its . . . procedures" (which was not). Id. at 243; see id. at 246. And in Damus v. Nielsen, 313 F. Supp. 3d 317 (D.D.C. 2018), the district court analyzed an Accardi claim that the agency failed to follow its own procedures, despite § 1252(a)(2)(B)(ii)'s seemingly broad stripping language. See 313 F. Supp. 3d at 327, 335–39.

Because the District Court dismissed Mr. Bourdon's complaint without analyzing whether he can succeed on his Accardi claim, I would vacate the decision below and remand for further consideration.

It bears emphasizing that a ruling that the Adam Walsh Act precludes review pursuant to § 701(a)(2) would also allow the District Court to hold, even without resort to Accardi, that courts may review the process used to arrive at the final action regarding an I-130 petition (even if they cannot review the substantive decision whether to exercise discretion). The Bourdon decision's basis in the wrong provision of the APA has profound and troubling implications, as Judge Jordan explained in his compelling dissent. See Bourdon, 940 F.3d at 555–57 (Jordan, J., dissenting) ("Although [the Adam Walsh Act] forecloses review of USCIS' ultimate conclusion about whether Mr. Bourdon poses 'no risk' to his wife, it does not bar jurisdiction to review the procedures used to come to that determination."). The Bourdon panel's statutory ruling and method of

24

interpretation simply "does not contain any limiting principle." Id.  It would shield from review an agency decision to deny all applications filed on Tuesdays, or any other arbitrary agency action that clearly fails to comport with federal regulations and the dictates of the Constitution.  See id. at 554.  Whether a litigant's challenge is based on the exercise of discretion on the one hand, or based on the legal basis for exercising that discretion on the other, are two different things.  The Bourdon decision entirely ignores that distinction.

### III.    Conclusion

The Bourdon panel was mistaken when it dismissed Mr. Bourdon's APA claim based on its decision that the Adam Walsh Act explicitly precludes judicial review.  The text of the Act says nothing of the kind, and neither is there any evidence that Congress implicitly precluded all judicial review.  I respectfully dissent from my court's decision to deny en banc rehearing.