In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3387

HOLY VIRGIN PROTECTION CATHEDRAL OF
THE RUSSIAN ORTHODOX CHURCH OUTSIDE RUSSIA,
DIOCESE OF CHICAGO AND DETROIT, and
NATALIJA KALINICENKO,

*Plaintiffs-Appellants*,

*v.*

MICHAEL CHERTOFF, SECRETARY
OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5962—**Charles R. Norgle, Sr.**, *Judge.*

---

ARGUED FEBRUARY 6, 2007—DECIDED AUGUST 24, 2007

---

Before KANNE, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* This case presents an unusual variation on the many petitions and appeals this court receives in the area of immigration law. It concerns the ultimately unsuccessful effort of Natalija Kalinicenko to obtain and keep a visa that would permit her to work as a Head Sister at the Holy Virgin Protection Cathedral of the Russian Orthodox Church Outside Russia, Diocese of Chicago and Detroit ("the Church"). At one point, Kalinicenko had such a visa, but the Department of

Homeland Security (DHS) revoked it in 2004. Both the Church and Kalinicenko sued the Secretary, the Acting Director of U.S. Citizenship and Immigration Services (CIS), and the Director of the Department's Administrative Appeals Office, seeking various forms of relief that we detail below. The district court dismissed the suit, finding that 8 U.S.C. § 1252(a)(2)(B)(ii) stripped it of subject-matter jurisdiction over the action. We agree with the district court that the statute applies here, and we therefore affirm its judgment dismissing the case on jurisdictional grounds.

**I**

There are few additional facts that matter on appeal. On April 25, 2001, the Church filed an immigrant visa petition on behalf of Kalinicenko under the "special immigrant" provisions of § 1101(a)(27)(C), which applies to certain religious workers. The former Immigration and Naturalization Service (INS) approved the petition in August 2002. A little more than two years later, however, the DHS (which by then had taken over the INS's responsibilities in this area) issued a Notice of Intent to Revoke the visa. The Notice listed three reasons for the DHS's conclusion that the visa had been granted improperly: first, "[t]he petitioner has failed to sufficiently demonstrate, beyond a simple assertion, that the position of Head Sister (Elder sister) is a traditional religious occupation or vocation within their denomination . . . [but rather has shown only that] the position is primarily an amalgam of secular and administrative duties"; second, the petitioner "does not . . . appear to have followed any course of religious training or study or entered into any formal religious/monastic order or discipline"; and third, "the evidence does not demonstrate that [Kalinicenko] was continuously engaged in the offered vocation or occupation

for at least the two year period immediately preceding the filing of this petition." The Notice also implied, although it did not charge, that the Church had not demonstrated its ability to pay Kalinicenko's proposed wages. It gave the Church 15 days to submit evidence in opposition to the proposed action.

On December 17, 2004, DHS formally revoked the visa. The final notice of revocation explained the reasons for the revocation in a bit more detail. It appears that Kalinicenko had been working in a volunteer capacity at the Church, but that there was some plan to convert her position to a paid, full-time one. DHS noted that the Church's stated plan to do so was not credible in light of "the petitioner's own assertions . . . [that the job is] normally performed by unpaid (volunteer) appointees from among the congregation." Coupling this admission with "the absence of any specific religious training requirements" or evidence that Kalinicenko was qualified to perform this work, DHS believed that the position in question had been created for purposes of obtaining an immigration benefit. It viewed the work that she had been doing for the Church over the two years prior to her petition as "active membership" in her church, but it concluded that "being an involved and devoted parishioner does not constitute a religious occupation or vocation for purposes of immigrant visa classification."

The Church took an administrative appeal from this determination, but DHS's Administrative Appeals Office dismissed the appeal on September 19, 2005. It, too, gave three reasons for its decision: the lack of traditional religious duties required by the position; the uncertainty about how much time Kalinicenko had actually spent performing duties as Head Sister during the two-year period prior to the visa petition, as well as lack of clarity about her compensation and the amount of secular

work she was performing; and the lack of evidence about the Church's ability to pay her proposed salary.

After this defeat, both the Church and Kalinicenko filed the present suit in the district court. On December 30, 2005, the court granted the government's motion to dismiss. The Church filed a timely motion to vacate that decision, because the government's motion to dismiss had not been served on the Church. The district court granted that motion, took additional briefs from both sides, and then denied the motion to vacate on August 4, 2006. This appeal followed.

## II

The only question before us is whether the district court correctly concluded that it lacked subject-matter jurisdiction over this case, because of § 1252(a)(2)(B)(ii), which addresses judicial review of orders of removal. We begin, therefore, with the language of the statute:

(a) Applicable provisions . . .

(2) Matters not subject to judicial review . . .

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

. . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter

> to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

This raises the immediate question whether a decision by the Secretary of Homeland Security to revoke a previously approved visa is one that is "specified under this subchapter to be in the discretion" of the Secretary.

In the context of a similar case in which an underlying visa had been granted and then later revoked, this court held that 8 U.S.C. § 1155 definitively shows that the decision to revoke a visa is entirely in the Secretary's discretion. See *El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004). Section 1155 reads as follows:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition.

8 U.S.C. § 1155. In *El-Khader*, we held that §§ 1252 and 1155, taken together, show that decisions to revoke visas previously approved under § 1154 are unequivocally committed to the discretion of the Attorney General or the Secretary of Homeland Security. Importantly, those statutes do not suggest any standards that judges could use to assess exercises of that discretion. See *Heckler v. Chaney,* 470 U.S. 821 (1985). The Third Circuit agreed with our conclusion in *El-Khader* in *Jilin Pharmaceutical USA, Inc. v. Chertoff,* 447 F.3d 196 (3d Cir. 2006).

Kalinicenko's visa had been approved under § 1154(a)(1)(G)(I), which covers "[a]ny alien . . . desiring to be classified under section 1153(b)(4) of this title, or any person on behalf of such an alien, may file a petition with the Attorney General for such classification."

Section 1153(b)(4) is the provision of the immigration act that specifies the number of visas to be made available for certain qualified "special immigrants," including religious workers. Thus, Kalinicenko's visa, like that of the petitioner in *El-Khader*, had previously been approved under § 1154 and was subject to discretionary revocation.

The Church suggests that her appeal is different, because "the action challenged . . . involves not the exercise of discretion on an intimate set of facts, but the application of a policy improperly adopted, not authorized expressly or by implication by the statute creating the classification, and a policy in conflict with the religion clauses of the First Amendment." It relies for this argument on *U.S. Freightways Corp. v. Comm'r of Internal Revenue*, 270 F.3d 1137 (7th Cir. 2001). But *U.S. Freightways* was a case in which this court had to interpret regulations that had not been subject to formal notice and comment or equivalent procedures, and thus were entitled only to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). In this case, the degree of discretion that Congress wanted the Attorney General and the Secretary to exercise is spelled out in the statute itself. We thus do not find *U.S. Freightways* to be of particular help in resolving the question at hand.

*El-Khader* is the decision that governs here. That decision used a two-step analysis. First, we looked at the text of § 1252(a)(2)(B)(ii), which as we have indicated above precludes judicial review for actions within the discretion of the named officers. 366 F.3d at 566. Second, we examined § 1155 to see whether revocation of the visa before it was a decision within the discretion of the named Cabinet officer. *El-Khader* contrasted the broad discretion conferred by § 1155 with the strict requirements in the agency's regulations for the initial issuance of a visa. *Id*. at 568. We concluded that while "[i]t

is true that the INS has regulations requiring that there must be 'substantial and probative' evidence . . . to deny a petition on these grounds . . . these regulations are inapplicable in those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155. . . ." *Id.*

The Ninth Circuit's decision in *ANA Int'l Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004), may be in some tension with this outcome, but insofar as it differs from our earlier decisions, we are not persuaded to follow it. In *ANA*, the Ninth Circuit concluded, based on a presumption in favor of judicial review of agency action, that the only acts that § 1252(a)(2)(B)(ii) insulates from review are those "matters of pure discretion rather than discretion guided by legal standards." *Id.* at 891. Judge Tallman dissented, noting that "[n]ot only does [the Attorney General] decide whether such cause exists, he decides what constitutes such cause in the first place." *Id.* at 899. In *Jilin*, the Third Circuit cited both this court's *El-Khader* decision and Judge Tallman's dissent in *ANA* approvingly.

The only conceivable difference we see between *El-Khader* and the present case is that, as a result of amendments to the statute that took effect in 2005, the Secretary of Homeland Security now has the responsibilities that the Attorney General formerly had. See Pub. L. No. 109-13, Div. B, § 101(f)(1). This distinction, however, does not require a different result, as the Third Circuit held in *Jilin*. See 447 F.3d at 200 n. 6. The pertinent language of § 1252(a)(2)(B)(ii) has not changed, even though the 2005 amendments also added a new subsection (D) that allows review of decisions within subparagraph (B) insofar as the party is raising "constitutional claims or questions of law." See 8 U.S.C. § 1252(a)(2)(D), added by Pub. L. No. 109-13, Div. B, § 106(a)(1)(A)(iii). As we explain now, the

expansion of judicial review authorized by subpart (D) also does not require a different result.

Section 1252(a)(2)(D) reads as follows:

> Judicial Review of Certain Legal Claims—Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). This provision "restore[s] limited judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders." *Hamdan v. Gonzales*, 425 F.3d 1051, 1057 (7th Cir. 2005).

Following our ruling, Kalinicenko may well be placed in removal proceedings, at the conclusion of which she may conceivably seek review in this court (not the district court). At that time, she would be entitled to raise any constitutional claims she has in her petition for review. Nothing in § 1252(a)(2)(D), however, confers authority on the district court to review discretionary decisions by DHS, which are still governed by § 1252(a)(2)(B)(ii). The district court thus correctly ruled that it lacked subject-matter jurisdiction: DHS acted within its discretion in revoking a visa petition that it had approved under § 1154, and § 1252(a)(2)(B)(ii) makes that decision unreviewable.

The only question that remains is whether the existence of either party's constitutional claims changes this result. The Church and Kalinicenko observe that different religious orders have different systems for qualifying religious workers. Some may require formal training, others may not. Courts normally do not inter-

fere in the internal affairs of religious institutions, see *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S. 696 (1976). But the U.S. government is not dictating any matter of internal religious governance to the Church; it is only making a decision about the secular legal consequences of a given job and pay arrangement. Compare *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 882 (1990) (refusing to hold that "when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation"); *Tony & Susan Alamo Fndn. v. Sec'y of Labor*, 471 U.S. 290 (1985) (upholding application of Fair Labor Standards Act to religious foundation).

We need not decide whether there is an absolute bar against judicial review of even the most egregious alleged constitutional violations. It is enough to say that here, where the Secretary and the Administrative Appeals Office made it clear that they had concluded that the necessary factual basis for Kalinicenko's visa was lacking, that there is no further review in the courts. We save for another day, which we hope and trust will never come, the potential case where the Secretary decides to revoke all visas held by members of one religious group or of one particular ethnicity.

The judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

                        _____
                        *Clerk of the United States Court of Appeals for the Seventh Circuit*