In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1652

DEVON NOBLES and ANQI LIU,

*Plaintiffs-Appellants*,

*v.*

MARKWAYNE MULLIN, Secretary of Homeland Security, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-09473 — **Manish S. Shah,** *Judge*.

ARGUED JANUARY 29, 2026 — DECIDED JUNE 5, 2026

Before RIPPLE, LEE, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. American citizen Devon Nobles is
married to Anqi Liu, a Chinese citizen present in the United
States with H-1B status, allowing her to work in the country
for a limited time. Nobles twice filed Form I-130 petitions
seeking to classify Liu as his immediate relative under federal
immigration law, a prerequisite to Liu's securing a green card
based on their spousal relationship. But the United States Cit-
izenship and Immigration Services (USCIS) rejected those

petitions under the Adam Walsh Child Protection and Safety Act of 2006. This rejection was premised on the government's determination that Nobles—who was previously convicted of aggravated criminal sexual abuse involving a minor—failed to show he "poses no risk to" Liu under 8 U.S.C. § 1154(a)(1)(A)(viii)(I). With the Adam Walsh Act, Congress entrusted that no-risk determination to the Secretary of Homeland Security's "sole and unreviewable discretion." *Id.* Nobles and Liu sued, alleging 13 counts arising from the denials. The district court dismissed all but one count for lack of jurisdiction and dismissed the lone reviewable count for failure to state a claim. Because we agree that plaintiffs' claims either are not reviewable in this posture or fail on the merits, we affirm.

## I. Background

Before turning to the allegations and procedural background, we start with the applicable statutory framework.

### A. Statutory Background

The Immigration and Nationality Act (INA) provides:

> Except as provided in clause (viii), any citizen of the United States claiming that an alien is entitled … to an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification.

8 U.S.C. § 1154(a)(1)(A)(i). The INA defines "immediate relatives" to include "the children, spouses, and parents of a citizen of the United States." *Id.* § 1151(b)(2)(A)(i).

When a petition is filed, "the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative … approve the petition." *Id.* § 1154(b). Once approved, the immediate-relative non-citizen may remain in the United States notwithstanding other statutory limits. *E.g., id.* § 1151(b).

But with the Adam Walsh Act, Congress imposed an additional restriction on that process. The Act added a provision stating that section 1154(a)(1)(A)(i) (the relative-status-adjustment provision):

> (I) … shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, *in the Secretary's sole and unreviewable discretion*, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

> (II) For purposes of subclause (I), the term "specified offense against a minor" is defined as in section 20911 of title 34.

*Id.* § 1154(a)(1)(A)(viii) (emphasis added). So, citizens convicted of an offense against a minor enumerated in 34 U.S.C. § 20911(7) *may not sponsor* their immediate relative's immigration petition *unless* the Secretary of Homeland Security makes the no-risk determination. *Id.* Congress has authorized USCIS to make that determination on behalf of the Secretary. 6 U.S.C. § 271(b). Whether the Secretary (or USCIS acting on his behalf) makes the no-risk determination in the convicted

citizen's favor is committed to "the Secretary's sole and unre-
viewable discretion." 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

Another provision within the INA strips courts of jurisdic-
tion over suits challenging denials of discretionary immigra-
tion relief. *See id.* § 1252(a)(2)(B). It says, in relevant part:

> [N]o court shall have jurisdiction to review …
> any other decision or action of … the Secretary
> of Homeland Security the authority for which is
> specified under this subchapter[1] to be in the
> discretion of … the Secretary of Homeland Se-
> curity[.]

*Id.* § 1252(a)(2)(B)(ii). But Congress also preserved judicial re-
view in limited circumstances:

> Nothing in subparagraph (B) … which limits or
> eliminates judicial review, shall be construed as
> precluding review of constitutional claims or
> questions of law raised upon a petition for re-
> view filed with an appropriate court of appeals
> in accordance with this section.

*Id.* § 1252(a)(2)(D). Because section 1154(a)(1)(A)(viii)(I)'s no-
risk determination is within "the Secretary's sole and unre-
viewable discretion," section 1252(a)(2)(B)(ii) and (D) allow

---

[1] "'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the
United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigra-
tion.'" *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010). So, section
1252(a)(2)(B)(ii) strips courts of jurisdiction to review the Secretary's "de-
cision or action" to make the discretionary no-risk determination within
section 1154(a)(1)(A)(viii)(I).

legal or constitutional challenges to that determination to be raised only in the courts of appeals pursuant to a petition for review of a final order of removal.

### B. Plaintiffs' Allegations

Against that backdrop, we take all well-pled allegations in the complaint as true and construe them in plaintiffs' favor. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).

Nobles and Liu are a married couple living in Lake County, Illinois. Nobles is an American citizen. Liu—a citizen of China—has H-1B status, allowing her to be lawfully present and work in the United States for a limited time. In 2013, Nobles was convicted of aggravated criminal sexual abuse involving a minor.[2] Liu knew of Nobles's conviction when the couple married in 2015.

Nobles has filed two Form I-130 petitions with USCIS seeking to designate Liu as his immediate relative so that she can adjust her immigration status. USCIS denied Nobles's first petition in March 2019, citing deficiencies in the documentation supporting the petition. In April 2019, Nobles submitted a second petition along with an affidavit addressing the deficiencies in the first petition. USCIS responded with a notice of intent to deny, prompting Nobles to submit additional evidence, including a sex-offender risk assessment concluding that Nobles posed no risk to Liu. USCIS denied the second petition. According to the denial letter, USCIS determined that Nobles failed to demonstrate that he poses no risk to Liu.

---

[2] On appeal, plaintiffs do not dispute that Nobles's crime of conviction is a "specified offense against a minor" under 34 U.S.C. § 20911(7).

### C. Procedural History

In response, Nobles and Liu sued the Secretary of Homeland Security, USCIS, and various USCIS personnel in federal district court. Plaintiffs brought 13 counts under the Administrative Procedure Act (APA) challenging USCIS's denial of Nobles's Form I-130: four challenging the agency's exercise of statutory authority (the "statutory claims") and nine alleging violations of the United States Constitution (the "constitutional claims"). Defendants moved to dismiss all claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

The district court granted that motion as to three of the four statutory claims and all nine of the constitutional claims. It concluded that the Adam Walsh Act "gives the Secretary total and unreviewable discretion to determine whether the petitioner poses a risk to the beneficiary of the petition," precluding judicial review of plaintiffs' challenges in Counts I, II, and III to the evidentiary standard and processes USCIS applies in making the no-risk determination. It dismissed *sua sponte* the fourth statutory claim under Rule 12(b)(6), finding it had jurisdiction over predicate legal questions but concluding that "the statutory language is unambiguous that the Adam Walsh Act applies to adult beneficiaries," which was fatal to Count IV on the merits. And based on section 1252(a)(2)(D), the district court determined that "the [INA] reserves judicial review to petitions of review during removal proceedings," and otherwise strips the federal courts of jurisdiction to consider the constitutional claims in Counts V through XIII outside of removal proceedings.

Plaintiffs timely appealed. We review pleadings-stage dismissals *de novo*. *Dhakal v. Sessions*, 895 F.3d 532, 536 (7th Cir.

2018) (Rule 12(b)(1)); *Jakupovic v. Curran*, 850 F.3d 898, 901 (7th Cir. 2017) (Rule 12(b)(6)).

## II. Discussion

With the Adam Walsh Act, Congress delegated to the Secretary of Homeland Security the "sole and unreviewable discretion" to discern whether a citizen "convicted of a specified offense against a minor … poses no risk" to his non-citizen would-be beneficiary. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The INA bars judicial review of "any other decision or action of … the Secretary of Homeland Security the authority for which is specified … to be in the discretion of … the Secretary." *Id.* § 1252(a)(2)(B)(ii). And the APA prohibits review where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2). Our power to review plaintiffs' claims turns on whether plaintiffs seek to challenge the Secretary's unreviewable, discretionary decision-making as exercised by USCIS. If so, we lack jurisdiction.

It is fundamental to our system that our power is limited to "that power authorized by Constitution and statute" and thus "is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a court of limited (not general) jurisdiction, our "fair presumption is … that a cause is without [our] jurisdiction, until the contrary appears." *Turner v. Bank of N. Am.*, 4 U.S. 8, 10 (1799) (Ellsworth, C.J.). "Observing the limits on judicial authority … is required by a judge's oath to follow the law." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 (2025).

Minding these principles, we conclude that we lack jurisdiction to review all but one of plaintiffs' statutory and

constitutional claims, and that the remaining claim fails as a matter of law. We affirm.

### A. Statutory Claims

We begin with plaintiffs' statutory claims under the APA. Whether we have jurisdiction under the Adam Walsh Act is a matter of first impression in our Circuit. We first consider Counts I, II, and III and the Adam Walsh Act's plain text. Then, we discuss out-of-circuit approaches. Ultimately, we conclude that we lack jurisdiction over Counts I, II, and III, and we affirm dismissal. We then assess Count IV. Finding our jurisdiction over that claim secure, we affirm its dismissal on the merits.

*1.  We Lack Jurisdiction to Review Counts I, II, and III.*

In Counts I and II, plaintiffs argue on the merits that the beyond-any-reasonable-doubt standard that USCIS applies to no-risk determinations under the Adam Walsh Act is *ultra vires* and was illegally adopted without notice-and-comment rulemaking. Plaintiffs point out that neither the Adam Walsh Act nor the INA adopts this evidentiary standard. Moreover, plaintiffs posit that USCIS adopted the beyond-any-reasonable-doubt standard—what they call "a rule, policy, or interpretation of general applicability"—unlawfully through agency memoranda[3] rather than through formal rulemaking

---

[3] *See* USCIS Interoffice Memorandum, *Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006* (Feb. 8, 2007) [https://perma.cc/X4PU-TWJ5] ("[A] petitioner who has been convicted of a specified offense against a minor must submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, beyond any

processes. And they contend the standard improperly supplants the preponderance-of-the-evidence assessment they argue is required under agency precedent. *See In re Chawathe*, 25 I. & N. Dec. 369, 375 (AAO 2010) ("Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought.").

In Count III, plaintiffs contend that USCIS's denial of their Form I-130 petition was arbitrary and capricious because USCIS failed to consider the evidence that Nobles submitted in support of the petition. According to plaintiffs, USCIS's denial provided no explanation supporting the conclusion that Nobles failed to demonstrate beyond any reasonable doubt he poses no risk to Liu.

Plaintiffs concede that we lack jurisdiction to review USCIS's final no-risk determination but instead urge that their statutory claims are reviewable under the APA[4] insofar as they challenge the legal standard and processes that USCIS employed in rejecting Nobles's Form I-130. But recall the Adam Walsh Act's plain text: a convicted citizen may not petition for immediate-relative status "*unless* the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, *determines* that the citizen poses no risk to the alien." 8 U.S.C. § 1154(a)(1)(A)(viii)(I) (emphases added).

---

reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies).").

[4] The APA itself is not an independent source of subject-matter jurisdiction. *St. Vincent Med. Grp., Inc. v. U.S. Dep't of Justice*, 71 F.4th 1073, 1075 (7th Cir. 2023).

"Determines" denotes more than the final decision on the petition. It includes the process of reaching that decision, too.

Here, we "begin (and find that we can end) our search for Congress's intent with the text and structure of" section 1154(a)(1)(A)(viii)(I). *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). We presume that "the legislature says what it means and means what it says." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (cleaned up). To "determine" means "to fix conclusively or authoritatively," and "to find out or come to a decision about by investigation, reasoning, or calculation." *Determine*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). We conclude that "determines" within the Adam Walsh Act captures both the process of reaching a final decision and the final decision itself. *See Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 542 (11th Cir. 2019) (concluding that "'determine' encompasses making a final decision—*and* the method for reaching that final decision (or, as the dictionaries put it, the thought, consideration, research, investigation, or calculation).").

The text of the Adam Walsh Act supplies strong evidence of Congress's intent to broadly bar judicial review of the no-risk determination. The statute dictates that the Secretary's "determin[ation]"—both the final decision on the petition and process in reaching that decision—is committed to the "Secretary's sole and unreviewable discretion." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). "Discretion" refers to "[i]ndividual judgment" and "the power of free decision-making." *Discretion*, Black's Law Dictionary (8th ed. 2004) (also defining "sole discretion" as "[a]n individual's power to make decisions

without anyone else's advice or consent").[5] And "unreviewable" means "[i]ncapable of being legally or judicially reviewed." *Unreviewable*, Black's Law Dictionary.

Putting the definitions to work, we conclude "the text of the statute controls our decision." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994). The Adam Walsh Act confers on the Secretary (acting through his delegee USCIS) the sole power to determine whether the citizen poses no risk to the non-citizen beneficiary without anyone else's input and without being subject to judicial review. Subjecting USCIS's evidentiary standard to notice-and-comment rulemaking, or making the agency's fact-finding reviewable in court, would impermissibly introduce other parties into the decision-making equation. That would conflict with Congress's clear grant of "sole and unreviewable discretion" to the Secretary.

---

[5] Reviewing the Adam Walsh Act, our Eighth Circuit colleagues observed:

> A grant of "sole" discretion is among the strongest known to the law. It implies that the decisionmaker is simply not bound by standards set by another authority. This type of discretion necessarily includes authority to implement practices or procedures for making decisions. … We believe it is fairly discernible in the statutory scheme, that Congress has granted the Secretary sole authority to establish a framework for USCIS adjudicators to use in making the no risk discretionary determination.

*Bremer v. Johnson*, 834 F.3d 925, 931 (8th Cir. 2016) (cleaned up).

"If the statutory language's plain meaning is unambiguous, our inquiry ends there." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020). The Adam Walsh Act's plain text is crystal clear: we lack the power to review plaintiffs' statutory claims aimed at USCIS's final no-risk determination *and* the antecedent decision-making processes.

That conclusion—that we lack jurisdiction to review the Secretary's final decision and his method for reaching it—accords with the approach taken by six of our sister circuits. *See Bourdon*, 940 F.3d at 542–45; *Bakran v. Sec'y, DHS*, 894 F.3d 557, 563–64 (3d Cir. 2018); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018); *Privett v. Sec'y, DHS*, 865 F.3d 375, 380–81 (6th Cir. 2017); *Roland v. USCIS*, 850 F.3d 625, 629–30 (4th Cir. 2017); *Bremer v. Johnson*, 834 F.3d 925, 930–31 (8th Cir. 2016).

The D.C. Circuit stands alone in agreement with plaintiffs' interpretation of the Adam Walsh Act. *See Castaneira v. Noem*, 138 F.4th 540 (D.C. Cir. 2025).[6] Construing "determines" more narrowly and citing the "strong presumption in favor of judicial review of administrative action," the *Castaneira* court held that it had jurisdiction to consider whether *Chawathe*'s preponderance-of-the-evidence standard was binding on USCIS. *Id.* at 549 (cleaned up). In doing so, it observed that "Congress may shield from judicial review an agency's ultimate determination without precluding courts from reviewing the 'practice[s] or procedure[s] employed in making' such individual determinations." *Id.* (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

Plaintiffs ask us to follow *Castaneira* and *McNary* to conclude we have jurisdiction to reach their statutory claims. But

---

[6] *Castaneira* was decided after the district court's decision in this case.

neither *Castaneira* nor *McNary* persuade us to adopt the D.C. Circuit's reading.

*First*, we have already held the APA's presumption favoring judicial review does not trump the INA's jurisdiction-stripping framework. As we observed in *Britkovyy v. Mayorkas*, the presumption that agency action is reviewable is far from absolute. 60 F.4th 1024, 1027, 1030 (7th Cir. 2023). There, we encountered a statute—8 U.S.C. § 1255—governing the discretionary adjustment of status for arriving aliens. *Id.* at 1026. Regulations provide for USCIS's exclusive jurisdiction to adjust the status of arriving aliens. *Id.* (citing 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)). We held that we lack jurisdiction to review a plaintiff's challenge to the denial of his adjustment-of-status application. *Id.* at 1025. We observed that "Congress has sharply limited judicial review in the immigration context, and 'the APA's general provision authorizing judicial review of final agency actions must yield to … immigration-specific limitations.'" *Id.* at 1027 (quoting *Dijamco v. Wolf*, 962 F.3d 999, 1003 (7th Cir. 2020) (alteration in original)). We held that 8 U.S.C. § 1252(a)(2)(B)(i) precluded the appellant from bringing an APA challenge to the denial of his application outside the context of removal proceedings. *Id.* The same reasoning applies here to USCIS's denial of Nobles's petition under the Adam Walsh Act and section 1252(a)(2)(B)(i).

*Second*, we are not persuaded that we should read "determines" more narrowly. Following *Castaneira*, Plaintiffs cite to *McNary* in support of their narrower reading of "determines"—that it only refers to USCIS's ultimate decision denying the petition. But *McNary* is readily distinguishable and does not alter our plain-text analysis.

In *McNary* (which long predated the Adam Walsh Act), the Supreme Court construed a different jurisdiction-stripping provision that read: "There shall be no administrative or judicial review of a *determination* respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. § 1160(e)(1) (emphasis added). The Supreme Court held that "the reference to 'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions." *McNary*, 498 U.S. at 492.

*McNary*'s statutory interpretation analysis is of limited utility here. For one, other provisions within that statute fortified that "single act" understanding of "determination" in context. *See id.* (discussing 8 U.S.C. § 1160(e)(3)(A) and noting it provides for "'judicial review of such *a denial*'—again referring to a single act"). We have no such indication in the Adam Walsh Act. For another, the noun "determination" does not appear in the Adam Walsh Act. The Act uses the verb "determines" which, as explained above, connotes more than just the ultimate decision itself. We must also take care not to place too much weight on the meaning of standalone terms. "The definition of words in isolation … is not necessarily controlling in statutory construction." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Instead, we consider the interplay of the words used in context. *Id.* Congress has provided that the Secretary's exercise of discretion to "determine[]" under the Adam Walsh Act is itself "sole and unreviewable." *Bourdon*, 940 F.3d at 542 n.2. By contrast, the statute in *McNary* did not include such a clear statement granting wide-ranging discretion to the Executive.

Further, Congress's use of "sole and unreviewable" in the Adam Walsh Act—strong modifiers absent from the statute at issue in *McNary*—evinces its intent to enact a sweeping jurisdictional bar. The statute in *McNary* stripped jurisdiction to a lesser degree by otherwise prescribing specific procedures for judicial and administrative review of a "determination." *See* 8 U.S.C. § 1160(e)(2)–(3); *McNary*, 498 U.S. at 491 n.12. We must "give effect, if possible, to every clause and word" of section 1154(a)(1)(A)(viii). *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation omitted). Nothing in the Adam Walsh Act cabins the exercise of the Secretary's "sole and unreviewable discretion" to the single act of denying or approving a Form I-130. *McNary* does not disturb our conclusion that Congress intended to render unreviewable USCIS's exercise of discretion in determining whether Nobles posed no risk to Liu.

Counts I, II, and III each challenge USCIS's evidentiary standard and purported failure to consider Nobles's submissions supporting his Form I-130. Those challenges target USCIS's processes for determining whether Nobles poses risk to Liu. Because we conclude, like all but one of our sister circuits, that USCIS's methods of adjudicating Nobles's petition "are just as unreviewable as the Secretary's ultimate decisions themselves," *Gebhardt*, 879 F.3d at 987, we affirm the district court's dismissal for lack of jurisdiction of Counts I, II, and III.

   *2.  We Dismiss Count IV on the Merits.*

With Count IV, plaintiffs allege that USCIS exceeded its authority by making the no-risk determination with respect to Liu, an adult (rather than a minor) beneficiary. Defendants moved to dismiss Count IV for lack of jurisdiction, but the district court dismissed it on the merits *sua sponte*. We affirm.

As the district court correctly held, we have jurisdiction to resolve "predicate legal questions," including whether section 1154(a)(1)(A)(viii) applies to Nobles's Form I-130 submission. *See Bremer*, 834 F.3d at 929; *Privett*, 865 F.3d at 380. Plaintiffs argue that section 1154(a)(1)(A)(viii)'s discretionary no-risk determination only applies where the beneficiary is a minor and thus does not apply because Liu is an adult.

We take as true plaintiffs' factual allegations, but plaintiffs' "legal conclusions"—such as their assertion that the Act only applies to minor beneficiaries—"are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Still, we construe factual allegations in light of the governing sources of law giving rise to a claim. Where, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Plaintiffs' position is without textual support. The Adam Walsh Act prohibits Nobles from petitioning for immediate-relative status absent a determination that he "poses no risk to *the alien with respect to whom a petition described in clause (i) is filed*." 8 U.S.C. § 1154(a)(1)(A)(viii)(I) (emphasis added). Here, that alien is Liu, an adult. And clause (i) refers to petitions classifying a family member as an "immediate relative," *id.* § 1154(a)(1)(A)(i), a term defined by statute to include "children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age," *id.* § 1151(b)(2)(A)(i). So, the statutory text contemplates *both* minor *and* adult beneficiaries.

Plaintiffs argue that "contextual clues" support their atextual reading. They argue that the Adam Walsh Act targets

child predators by defining "specified offense[s] against a minor" to account for "all offenses by child predators." 34 U.S.C. § 20911(7). They point out that the full name of the enactment—the "Adam Walsh Child Protection and Safety Act of 2006"—emphasizes the protection of children. Elsewhere, the Adam Walsh Act uses "sex offender" as an umbrella term to refer to those who offend against either adults or children, *see* 34 U.S.C. § 20911(1), (5), permitting the inference that clause (viii) was intended to limit the no-risk determination to minor beneficiaries only.

But none of these other features of the Adam Walsh Act can supplant section 1154(a)(1)(A)(viii)(I)'s plain text, which does not specify that "the alien with respect to whom a petition described in clause (i) is filed" must be a minor. "As [the Supreme Court] has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text; the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) (cleaned up).

In effect, plaintiffs seek to re-write section 1154(a)(1)(A)(viii)(I) to require the Secretary to "determine[] that the citizen poses no risk to the [*minor*] alien with respect to whom a petition described in clause (i) is filed." But that is not the statute Congress enacted. By its plain terms, section 1154(a)(1)(A)(viii)(I) unambiguously applies to beneficiaries of any age. Where age affects a beneficiary's eligibility, as for under-21 parents, Congress has so specified. *See id.* § 1151(b)(2)(A)(i).

Finally, it was not error for the district court to reach this issue *sua sponte*. Doing so is generally disfavored, but does not

warrant reversal where, as here, we agree with the district court that plaintiffs' claim is plainly foreclosed as a matter of law. *See Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003).

Because the statute's plain language forecloses plaintiffs' theory that it does not apply to Liu, Count IV fails to state a claim for which relief can be granted. We affirm dismissal.

## B. Constitutional Claims

Next, plaintiffs identify nine purported constitutional deficiencies with USCIS's no-risk determination and denial of Nobles's Form I-130.[7] The district court dismissed these claims for lack of jurisdiction, and we affirm.

We have yet to address whether constitutional claims are reviewable under the Adam Walsh Act. The Act imposes no express limit on "the Secretary's sole and unreviewable discretion." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). And the INA's jurisdiction-stripping statute sweeps in claims based on "nonstatutory" authority:

---

[7] Specifically, plaintiffs claim that the Adam Walsh Act and USCIS's no-risk determination: (1) violate plaintiffs' Fifth Amendment liberty and property interests in marriage, family, and a fair adjudication of their petition; (2) impinge plaintiffs' substantive due process rights to marriage; (3) invade the province of the states to recognize marital relationships under the Tenth Amendment; (4) offend due process and non-delegation principles by imposing a beyond-any-reasonable-doubt standard; (5) fail to define "no risk" and are thus void for vagueness and lack of notice; (6) amount to an unconstitutional bill of attainder; (7) violate the constitutional protection against double jeopardy; (8) violate equal protection principles, as Nobles and Liu are in an interracial marriage; and (9) amount to other unspecified civil rights violations arising from USCIS's purported bias against interracial marriages.

> Notwithstanding any other provision of law (statutory or *nonstatutory*) … no court shall have jurisdiction to review … any other decision or action of … the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of … the Secretary of Homeland Security[.]

*Id.* § 1252(a)(2)(B) (emphasis added).

As the federal government points out, "nonstatutory" federal law includes constitutional provisions. *See Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("[I]n declaring what shall be the supreme law of the land, the constitution itself is first mentioned[.]"). Section 1252(a)(2)(D) preserves judicial review of legal and constitutional claims, but *only* in a petition for review of a final removal order filed in the court of appeals. Taken together, these provisions preclude review of claims outside that context.

Our sister circuits have split over whether constitutional claims are reviewable notwithstanding the Adam Walsh Act and section 1252(a)(2)(B)(ii). The Fourth and Sixth Circuits have concluded they lack jurisdiction over such constitutional claims because section 1252 permits review of them only in a petition for review of a final order of removal. *Roland*, 850 F.3d at 629; *Privett*, 865 F.3d at 381–82. On the other hand, the Eighth Circuit has held courts may review "colorable" constitutional claims—those with "some possible validity"—despite section 1252(a)(2)(B)(ii). *Bremer*, 834 F.3d at 932. The Third Circuit has addressed such claims on the merits without specifying a threshold for jurisdiction. *Bakran*, 894 F.3d at 564. And the Ninth Circuit has "assume[d], without deciding, that

the Adam Walsh Act permits [the court of appeals] to review colorable constitutional claims." *Gebhardt*, 879 F.3d at 988.

In addressing this issue in the first instance, we are guided by the "well-established principle" that with constitutional challenges, "we will not read a statutory scheme to take the extraordinary step of foreclosing jurisdiction unless Congress' intent to do so is manifested by clear and convincing evidence." *Califano v. Sanders*, 430 U.S. 99, 109 (1977) (cleaned up). Here, applying sections 1252(a)(2)(B)(ii) and (a)(2)(D), we hold that we lack jurisdiction over plaintiffs' constitutional claims in this posture because Congress has channeled their claims into removal proceedings. Given the enactment history of section 1252(a)(2)(D), we are confident that is what Congress effectuated.

Before the INA was amended to include section 1252(a)(2)(D), the Supreme Court allowed a habeas action to proceed notwithstanding section 1252(a)(2)(A)'s jurisdictional bar. *INS v. St. Cyr*, 533 U.S. 289, 310–13 (2001). There, a foreign national with a criminal conviction facing removal raised a legal challenge in a habeas petition despite section 1252's prohibition on such petitions for judicial review. *Id.* at 293. The Court observed that to "entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions," so constitutional avoidance counseled in favor of finding jurisdiction over the habeas action. *Id.* at 300, 314.

In response to *St. Cyr*, Congress amended the INA to allow "constitutional claims or questions of law" to be raised in a petition for review in the courts of appeals. *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)). Since its enactment, the Supreme

Court has recognized that section 1252(a)(2)(D) adequately addresses the concern raised in *St. Cyr* about jurisdiction stripping constitutional claims entirely. *See Wilkinson v. Garland*, 601 U.S. 209, 218 n.3 (2024) ("Congress enacted § 1252(a)(2)(D) to ensure the constitutionality of its jurisdiction-stripping provisions."); *Patel v. Garland*, 596 U.S. 328, 339 (2022) ("While Congress could have responded to *St. Cyr* by lifting § 1252's prohibitions on judicial review altogether, it instead excised only the legal and constitutional questions that implicated our concern."). That concern is not unique to the immigration context, as the Supreme Court has also avoided construing statutes to effectuate wholesale jurisdiction-stripping of constitutional claims related to federal benefits. *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 681 n.12 (1986) (collecting authorities and noting "the serious constitutional question that would arise" if plaintiffs were denied any forum to bring constitutional claims).

We do not write on a blank slate when considering the extent to which Congress may channel or bar constitutional claims. *See Holy Virgin Prot. Cathedral of the Russian Orthodox Church Outside Russ. v. Chertoff*, 499 F.3d 658, 663 (7th Cir. 2007). In *Holy Virgin*, we first considered claim channeling—allowing claims to be raised only in certain proceedings in a particular forum—in holding that constitutional claims targeting immigration officials' discretionary acts are subject to section 1252(a)(2)(B)(ii)'s jurisdictional bar. *See id.* at 662–63. There, Homeland Security officials revoked a visa that initially permitted a non-citizen religious sister to work in the United States. *Id.* at 659. We lacked jurisdiction to review the sister's and her Church's constitutional challenges to the discretionary revocation under section 1252(a)(2)(B)(ii). *Id.* at 662. We observed that the sister "may well be placed in

removal proceedings, at the conclusion of which she may conceivably seek review in this court" and "would be entitled to raise any constitutional claims she has in her petition for review." *Id.* (discussing section 1252(a)(2)(D)).

But we did not end our analysis with claim channeling. The Church had potential constitutional claims that were not subject to channeling since it would never be subject to removal proceedings. It was in this context that we confronted the question of "whether the existence of either party's constitutional claims" made the agency's decision reviewable. *Id.* We took care to reserve the possibility that we could exercise jurisdiction over "egregious" constitutional violations—such as "the potential case where the Secretary decides to revoke all visas held by members of one religious group or of one particular ethnicity"—notwithstanding section 1252(a)(2)(B)(ii). *Id.* at 663.

Against that backdrop, we consider whether plaintiffs' constitutional claims are in fact channeled to a petition for review of a final removal order and whether they are nonetheless reviewable under *Holy Virgin*. Both Nobles *and* Liu seek to vindicate their individual constitutional rights allegedly violated by USCIS's denial of Nobles's Form I-130. Liu is lawfully present in the country with H-1B status notwithstanding USCIS's denial of the petition. Liu is neither subject to a notice to appear, 8 U.S.C. § 1229(a)(1), nor currently in removal proceedings, *id.* § 1229a. And because "the decision when to initiate removal proceedings is committed to the discretion of immigration authorities," Liu is powerless to initiate the proceedings in which she could raise her claims. *See Juarez v. Holder*, 599 F.3d 560, 566 (7th Cir. 2010) (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999));

8 C.F.R. § 239.1(a) (listing the federal officials who may initiate removal proceedings). But like the *Holy Virgin* plaintiff who "m[ight] well be placed in removal proceedings," the government could initiate a future removal proceeding against Liu. 499 F.3d at 662. As the government acknowledged at argument, Liu could raise her constitutional challenges to the no-risk determination under section 1252(a)(2)(D) in those proceedings. Because her claims are channeled to removal proceedings, we lack jurisdiction to review them.

By contrast, Nobles will never be able to raise his claims in removal proceedings because he is an American citizen not subject to removal. *See* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an *alien*" (emphasis added), defined by section 1101(a)(3) as "any person not a citizen or national of the United States"). So, like the Church in *Holy Virgin*, Nobles's constitutional claims are not channeled anywhere—they are simply barred.

But in affirming the district court today, we do no more than follow *Holy Virgin* and again "save for another day" difficult questions surrounding the extent to which Congress can categorically bar review of even the most serious constitutional claims. In this case, we need not confront those questions. It is enough for us to conclude that none of Nobles's claims amount to egregious—or, for that matter, colorable, *see Bremer*, 834 F.3d at 932—constitutional violations, precluding our jurisdiction.

To the extent that Nobles attempts to assert claims based on his own constitutional rights, he has missed the mark. First, although he invokes a constitutional right to reside in

the United States with his non-citizen spouse, the Supreme Court has squarely rejected the notion that the Constitution protects such a right, which is distinct from the right to marry.[8] *Dep't of State v. Muñoz*, 602 U.S. 899, 916 (2024) ("While Congress may show special solicitude to noncitizen spouses, such solicitude is a matter of legislative grace rather than fundamental right." (cleaned up)). Instead, the Constitution entrusts to Congress plenary power to regulate immigration. U.S. Const. art. I, § 8, cl. 4; *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909) ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over" immigration).

As for Nobles's equal protection claims, plaintiffs plead no specific facts suggesting that USCIS exceeded the bounds of its lawful discretion. They instead hypothesize in conclusory fashion that USCIS's determination may have been driven by animus against interracial marriage. Such "naked assertion[s]" without "further factual enhancement" are insufficient to state a claim. *Twombly*, 550 U.S. at 557.

Plaintiffs' bill-of-attainder theory fares no better. We have soundly rejected similar theories, reasoning that immigration statutes that regulate eligibility for immigration benefits are not "legislative act[s] that inflict[] punishment without a

---

[8] Nobles's conviction erects a barrier to plaintiffs' securing an immigration benefit that is not even directly tied to marriage. *See Bakran*, 894 F.3d at 565 ("[T]he availability of this immigration benefit is not exclusively contingent on marriage because parents and children may seek the benefit."). USCIS's denial is tied to his prior sex conviction, which permissibly carries collateral consequences. *Id.* at 565–66 (collecting cases and statutes showing the government may impose restrictions on convicted felons' ability to exercise rights and access government benefits).

judicial trial." *See Schellong v. INS*, 805 F.2d 655, 662–63 (7th Cir. 1986). The same reasoning controls here.

As with the statutory claims, under the Adam Walsh Act, Congress lawfully delegated authority to the Secretary, entrusting the no-risk determination to the Secretary's discretion (acting through USCIS). It channeled plaintiffs' constitutional claims, requiring them to be "raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). Because we encounter plaintiffs' constitutional claims outside of that procedure, and they do not raise any alleged constitutional violations we may otherwise review, we lack jurisdiction.

### III. Conclusion

We AFFIRM dismissal of Counts I through III and V through XIII for lack of subject-matter jurisdiction and Count IV for failure to state a claim.